# United States Court of Appeals
## For the First Circuit

No. 07-1925

IN RE MARY G. LARSON,
Debtor

MARY G. LARSON,

Plaintiff, Appellant,

v.

LLOYD L. HOWELL, JR., et al., and STEPHEN E. SHAMBAN,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Lynch, Circuit Judge,
Stahl, Senior Circuit Judge,
and Howard, Circuit Judge.

Gary W. Cruickshank for appellant.
Edward Fegreus with whom Frederick J. Watson was on brief for
appellees.

January 23, 2008

**LYNCH**, **Circuit Judge**.  This case requires us, as a matter of first impression, to determine whether the state crime of negligent vehicular homicide qualifies as a "criminal act" which would cap a debtor's homestead exemption to $125,000 under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, § 322(a), 119 Stat. 23, 97 (codified at 11 U.S.C. § 522(q)(1)(B)(iv)).  We hold that where a state court has found the debtor was criminally liable for negligent homicide, such a finding triggers the federal statutory cap on state homestead exemptions under the BAPCPA.

I.

The District Attorney of Plymouth County, Massachusetts, on September 12, 2002, filed criminal charges against Mary Larson, including a count of negligent homicide by motor vehicle under Mass. Gen. Laws ch. 90, § 24G(b).  At a hearing on November 11, Larson admitted the following facts.  On September 8, 2002, Larson, then age 69, was driving her van in East Bridgewater, Massachusetts, when she decided to take a shortcut home through a parking lot.  As she turned left across the other lane of traffic and into the lot, Larson struck the oncoming motorcycle of Lloyd Howell, who was driving straight through in the opposite lane.  Howell's wife, Sherri LaMattina-Howell, a passenger on the motorcycle, died as a result.  Larson said she did not see the oncoming motorcycle, but admitted she caused the accident.  The

-2-

judge found facts sufficient to find Larson guilty of negligent vehicular homicide, and continued the case without a finding for one year.

The accident also spurred a civil action in state court. In September of 2002, Howell filed a wrongful death lawsuit seeking damages against Larson for the death of his wife, his own injuries, and the harm to his two young children. Howell voluntarily stayed the tort action pending disposition of the criminal proceedings.

The civil suit resumed and on May 24, 2005, the state court granted summary judgment on the issue of liability for most of Howell's claims.[1] Howell and Larson settled the case for $1,000,000.

Larson filed a petition for bankruptcy under Chapter 7 in the Bankruptcy Court for the District of Massachusetts on October 11, 2005. On November 15, Larson claimed a homestead exemption under state law in the amount of $500,000. See Mass. Gen. Laws ch. 188, § 1A. On December 29, Howell objected to the amount of the homestead exception, contending that it should be limited to $125,000 under 11 U.S.C. § 522(q)(1)(B)(iv), which caps homestead exemptions claimed under state or local law at $125,000 if "the

---

[1] As Howell notes, "[a]n admission to sufficient facts may be introduced against the defendant in a subsequently litigated civil suit arising out of the same incident on the theory that the proceeding was the functional equivalent of a guilty plea, with the same degree of finality." Hopkins v. Madeiros, 724 N.E.2d 336, 346 (Mass. App. Ct. 2000) (quoting Flannery et al., Massachusetts Evidence § 3.5.1(b) (1999)) (internal quotation marks omitted).

debtor owes a debt arising from . . . any criminal act, intentional tort, or willful or reckless misconduct that caused serious physical injury or death to another individual in the preceding 5 years."[2] Howell argued that negligent vehicular homicide is a "criminal act," and that the disposition in the criminal case triggered the cap. On January 3, the bankruptcy trustee independently objected to Larson's homestead exemption on the same grounds.

Larson opposed the reduction in amount, though she repeated her admissions of responsibility for the accident and for LaMattina-Howell's death. Larson presented the same arguments she now makes on appeal: that § 522(q)(1)(B)(iv) did not cap her homestead exemption because (1) the "criminal act" language requires a level of mens rea beyond mere negligence; (2) the disposition in the state court was insufficient to establish a "criminal act"; and (3) Massachusetts public policy requires that homestead exemptions be liberally construed.[3]

---

[2]    The amount of the cap is currently set at $136,875 according to the triennial dollar-amount adjustments mandated by 11 U.S.C. § 104(b). The previous amount of $125,000 applies here, as the case was filed before the amount was adjusted to its current level. See 11 U.S.C. § 104(b)(3).

[3]    Larson further argued that the cap in § 522(q)(1) does not apply to the extent that the amount of an interest in property is reasonably necessary for the support of the debtor and her dependents. See 11 U.S.C. § 522(q)(2). Larson has abandoned this argument on appeal, apparently because her monthly income is ample enough to cover her expenses.

On April 5, 2006, the bankruptcy court issued an opinion finding that the accident constituted a "criminal act" under § 522(q)(1)(B)(iv).  In re Larson, 340 B.R. 444 (Bankr. D. Mass. 2006).  On May 15, 2007, the district court affirmed the bankruptcy court's decision.  Larson v. Howell (In re Larson), No. 06-11662, 2007 WL 1444093 (D. Mass. May 15, 2007).  Larson appealed.  We affirm.

## II.

Larson's appeal presents no contested factual issues, and we review the legal conclusions of the bankruptcy court de novo. Bourne v. Northwood Props. (In re Northwood Props.), ___ F.3d ___, 2007 WL 4209261, at *4 (1st Cir. Nov. 30, 2007) (citing Official, Unsecured Creditors' Comm. v. Stern (In re SPM Mfg. Corp.), 984 F.2d 1305, 1310-11 (1st Cir. 1993)); see also United States v. Yellin (In re Weinstein), 272 F.3d 39, 42 (1st Cir. 2001) ("A question of the interpretation of the Bankruptcy Code, like any other question of statutory interpretation, is a question of law that we review de novo.").

Larson first argues that the term "criminal act" in the BAPCPA requires more than mere negligence in order to trigger the $125,000 cap.  We begin with the language of the statute.  See, e.g., Duncan v. Walker, 533 U.S. 167, 172 (2001).  The statute provides that the cap applies where the debtor's debt arises from "any criminal act, intentional tort, or willful or reckless

-5-

misconduct" causing serious physical injury or death in the preceding five years. 11 U.S.C. § 522(q)(1)(B)(iv). Larson argues that the phrase "any criminal act" must be read as equivalent to the language referencing "intentional" torts and "willful or reckless" misconduct resulting in physical injury or death. Not so. The use of the disjunctive "or" indicates that a "criminal act" alone may trigger the subsection, in addition to an "intentional tort" or "willful or reckless misconduct." The terms mean different things, as the "or" signifies. There is no language modifying "criminal act" to indicate that Congress meant to limit the statute's operation to the subset of crimes defined in part by intentionality, willfulness or recklessness. Nor did Congress say "any criminal act except those defined as criminal negligence." Incidents of criminal negligence can result in physical injury or death. Congress chose to limit the ability of individuals who face monetary liability for such crimes to shelter their assets under state homestead exemption provisions.

Larson points to a snippet of what she calls legislative history in an effort to buttress her claim that § 522(q)(1)(B)(iv) only applies to crimes involving intentional, willful, or reckless behavior. A House conference report from 2002 stated that "[t]he conferees intend that the language in Section 522(q)(1) be liberally construed to encompass misconduct that rises above mere negligence under applicable state law." H.R. Rep. No. 107-617,

2002 WL 1751306, at 222 (2002) (Conf. Rep.). The argument fails for at least two reasons.

First, legislative history does not trump unambiguous statutory text. See Lamie v. U.S. Tr., 540 U.S. 526, 534 (2004) ("[W]hen the statute's language is plain, the sole function of the courts -- at least where the disposition required by the text is not absurd -- is to enforce it according to its terms." (quoting Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000)) (internal quotation marks omitted)); In re Weinstein, 272 F.3d at 43. The plain language reaches a result which is far from absurd.[4]

Second, even if there were room to look at statutory history, the conference report accompanied a version of the statute that was never enacted. See Bankruptcy Abuse Prevention and Consumer Protection Act of 2002, H.R. 333, 107th Cong. There is no analogous language in the legislative history accompanying the

---

[4] Even were we to consider the language from the conference report, the report's value to the appellant is far from clear. The excerpted language itself directs that § 522(q)(1) be "liberally construed" to encompass various kinds of misconduct, rather than be construed as excluding conduct otherwise reasonably included. Further, no indication is given that the excerpt was intended to apply to criminal acts. Indeed, one might expect a comment about "rising above mere negligence" to refer to the language in § 522(q)(1) directed at tort law. Finally, the behavior to which Larson admitted, "operat[ing] a motor vehicle recklessly or negligently so that the lives or safety of the public might be endangered and [thereby cause] the death of another person," Mass. Gen. Laws ch. 90, § 24G(b), may well be more serious than what the report terms "mere" negligence in any case.

version of § 522 that was actually enacted by Congress as part of the BAPCPA in 2005.  See H.R. Rep. No. 109-31(I) (2005), as reprinted in 2005 U.S.C.C.A.N. 88.  This isolated reference in a congressional report accompanying a version of a bill never enacted as law can just as easily be understood to have been rejected by the drafters of the later bill that was enacted.  We hold that the term "criminal act" in § 522(q)(1)(B)(iv) does not exclude crimes of negligence.

Larson's next line of defense is that a debtor must be "convicted" of a "criminal act" in order for § 522(q)(1)(B)(iv) to apply.[5]  But the literal lines of § 522(q)(1)(B)(iv) do not require a "conviction" as a prerequisite to application of the cap on homestead exemptions claimed under state law.  By contrast, a separate subsection of the statute makes explicit reference to conviction as a requirement for application of the cap.  Section 522(q)(1)(A) applies the exemption limit where "the debtor has been convicted of a felony . . . which under the circumstances, demonstrates that the filing of the case was an abuse of the provisions of this title."  This is not true of § 522(q)(1)(B)(iv), which applies wherever the debtor's debt "aris[es] from . . . any criminal act."  "[W]here Congress includes particular language in

---

[5]    Larson argues the bankruptcy court should at least have held an evidentiary hearing to determine whether her actions qualified as a "criminal act" under the statute.  That would have been error.  Respect must be given to state court decisions.

-8-

one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Russello v. United States, 464 U.S. 16, 23 (1983) (quoting United States v. Wong Kim Bo, 472 F.2d 720, 722 (5th Cir. 1972)) (alteration in original) (internal quotation marks omitted); see also Trenkler v. United States, 268 F.3d 16, 23 (1st Cir. 2001) (endorsing Russello's interpretive canon). We do not need to go further. It is evident that the criminal act requirement is met on the facts of this case.

We quickly dispose of Larson's subsidiary contention that the state court's disposition of the criminal charges does not establish a "criminal act." Under state law, she effectively pled guilty to the crime. In the criminal action, Larson admitted to facts necessary for the court to find that she was guilty of negligent vehicular homicide under Mass. Gen. Laws ch. 90, § 24G(b). The court's order of a continuance without a finding was based on those admissions and is a commonly used device in Massachusetts criminal courts. Under state law, "an admission of facts sufficient for finding of guilt . . . shall be deemed a tender of a plea of guilty" for purposes of requesting a continuation without a finding. Mass. Gen. Laws ch. 278, § 18; see also Commonwealth v. Sebastian S., 827 N.E.2d 708, 712 (Mass.

2005).[6]  As a matter of law, the bankruptcy court appropriately relied on the state law characterization of the effect of the continuance without a finding.

Larson's remaining arguments require little discussion. Larson points out that Massachusetts courts construe state homestead exemptions liberally in favor of debtors. See Garran v. SMS Fin. V, LLC (In re Garran), 338 F.3d 1, 6 (1st Cir. 2003) (citing Shamban v. Masidlover, 705 N.E.2d 1136, 1138 (Mass. 1999)). Even if true, it is irrelevant.  Construction of a federal statutory cap on homestead exemptions is involved here.

Finally, Larson makes a new argument on appeal. She contends that the bankruptcy court erred by failing to take evidence regarding whether her insurance policy contained a

---

[6]  We do not reach the question of whether a bankruptcy court is precluded from entertaining a constitutionally based collateral attack on an underlying state finding of guilt. There would be no basis for such an attack here.  Under a continuance without a finding, the defendant waives her right to a jury trial and becomes subject to probation-like terms for the duration of the continuance.  See Sebastian S., 827 N.E.2d at 712.  If the defendant violates those terms, "the 'admission' remains and may ripen into an adjudication of guilt and imposition of sentence." Commonwealth v. Villalobos, 777 N.E.2d 116, 120 (Mass. 2002). Here, the state court judge presiding over the criminal action informed Larson of the consequences of her admissions and the continuance without a finding, including her relinquishment of her jury trial rights. See Mass R. Crim. P. 12(a)(3) ("The judge shall not accept [] a plea or admission without first determining that it is made voluntarily with an understanding of the nature of the charge and the consequences of the plea or admission.").
We also need not address the question of the applicability of, or procedure under, § 522(q)(1)(B)(iv) where the existence of a criminal act has not been established previously in criminal proceedings by conviction, plea, or otherwise.

criminal acts exclusion clause.  Larson reasons that if there were such a clause in the policy and that Howell nevertheless collected a payment from the insurer, then the insurer's belief that no criminal act occurred should control on the issue of whether Larson committed a "criminal act" within the bankruptcy proceedings. Larson did not advance this argument in the Bankruptcy Court; the argument is thus forfeited.  Cf. Dávila v. Corporación de P.R. Para la Difusión Pública, 498 F.3d 9, 14 (1st Cir. 2007).  Even so, it is clear that whatever the language of an insurance policy, the insurer's own interpretation of that language has no bearing on this court's interpretation of § 522(q)(1)(B)(iv).

The judgment of the district court is affirmed.