05-2903-ag, 05-3662, 06-3605
Ruiz-Martinez v. Mukasey, Williamson v. Mukasey, Seoud v. BIA,

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2007

Docket No. 05-2903-ag
Docket No. 05-3662-ag
Docket No. 06-3605-ag

Argued in Tandem:  September 20, 2007                     Decided: February 14, 2008

_____

JOSE LUIS RUIZ-MARTINEZ,

Petitioner,

v.

MICHAEL B. MUKASEY,[1] as Attorney General of the United States, WILLIAM CLEARY,
Field Director, Detention and Removal, Buffalo District, Immigration and Customs
Enforcement, United States Department of Homeland Security,

Respondents.

_____

FLYNN SEAN WILLIAMSON,

Petitioner,

v.

MICHAEL B. MUKASEY,[1] Attorney General of the United States, ALPHANSO AGUIRRE,
Commissioner, U.S. Citizenship and Immigration Service, MARY ANN GANTNER, New York

_____

[1] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Michael B.
Mukasey is substituted for former Attorney General Alberto R. Gonzales.

District Director, Bureau of Citizenship and Immigration Service, EDWARD McELROY, New York Field Office Director, Bureau of Immigration and Customs Service, United States Department of Justice,

Respondents,

MEGAN L. BRACKNEY,

Amicus-Curiae.

_____

ELIAS SEOUD,

Petitioner,

v.

BOARD OF IMMIGRATION APPEALS,

Respondent.

_____


Before: MINER, CABRANES, Circuit Judges, and CROTTY, District Judge.[2]

Motions to dismiss for lack of jurisdiction because of untimeliness in three separate cases heard in tandem for review of final orders of removal issued by the Board of Immigration Appeals, the Board (i) having denied, in 05-2903, Petitioner's motion to reopen alleging ineffective assistance of counsel and application for suspension of deportation; (ii) having reversed, in 05-3662, an Immigration Judge's grant of Petitioner's application for withholding of removal pursuant to the Convention Against Torture; and (iii) having dismissed, in 06-3605, Petitioner's appeal from an Immigration Judge's order of removal on the basis of ineligibility for deferral of removal under the Convention Against Torture and cancellation of removal due to his aggravated felony conviction, the first two cases having been docketed originally as habeas corpus petitions.

Petition for review denied in 05-2903; petitions for review dismissed in 05-3662 and 06-3605.

_____

[2] The Honorable Paul A. Crotty, of the United States District Court for the Southern District of New York, sitting by designation.

Jose Luis Ruiz-Martinez, pro se (brief submitted by former counsel Mark T. Kenmore, Buffalo, New York).

MEGAN L. BRACKNEY, Kostelanetz & Fink, LLP, New York, New York, Amicus-Curiae for Petitioner Jose Luis Ruiz-Martinez.

PAPU SANDHU, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, United States Department of Justice (David J. Kline, Principal Deputy Director, of counsel), Washington, D.C., for Respondents in 05-2903-ag.

RANSFORD B. MCKENZIE, Brooklyn, New York, for Petitioner Flynn Sean Williamson.

PAPU SANDHU, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, United States Department of Justice (David J. Kline, Principal Deputy Director, of counsel), Washington, D.C., for Respondents in 05-3662-ag.

MEGAN L. BRACKNEY, Kostelanetz & Fink, LLP, New York, New York, Amicus-Curiae for Petitioner Flynn Sean Williamson.

MEGAN L. BRACKNEY, Kostelanetz & Fink, LLP, New York, New York, for Petitioner Elias Seoud.

BRYAN S. BEIER, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, United States Department of Justice (David J. Kline, Principal Deputy Director, of counsel), Washington, D.C., for Respondent in 06-3605-ag.

LEE GELERNT, American Civil Liberties Union Foundation, Immigrants' Rights Project, New York, New York, for Petitioners.

MINER, Circuit Judge:

The question presented in the captioned cases, which were ordered to be heard in tandem by a different panel of this Court, requires us to decide whether a petition for review of an order of removal issued by the Board of Immigration Appeals ("BIA") provides an adequate and effective substitute for the writ of habeas corpus in immigration cases following the enactment of the REAL ID Act of 2005, Pub. L. No. 109-13, § 106(a), 199 Stat. 231 (May 11, 2005) (the "Act" or "REAL ID Act"). The REAL ID Act, signed into law by President George W. Bush on May 11, 2005, changed the means for judicial review of an order of removal issued by the BIA by eliminating the availability of habeas corpus relief in the United States District Courts for aliens seeking to challenge orders of removal entered against them. The REAL ID Act provides that an alien seeking to obtain judicial review of an order of removal is required to file with the appropriate Court of Appeals a petition for review within the first 30 days after issuance of the order of removal. The petition for review is now "the sole and exclusive means for judicial review of an order of removal." 8 U.S.C. § 1252(a)(5). Orders of removal were entered against each of the Petitioners in the captioned cases prior to the passage of the REAL ID Act. In all three of the captioned cases, the Petitioners failed to file a petition for review with this Court within 30 days after the BIA issued an order of removal.

Responding to the Government's motion to dismiss for lack of jurisdiction because of untimeliness, the Petitioners in each of these three cases claim that the REAL ID Act violates the Suspension Clause of the United States Constitution, see U.S. Const. art. I, §9, cl. 2; see also INS v. St. Cyr, 533 U.S. 289, 300 (2001) ("A construction of [the Immigration and Nationality Act] that would entirely preclude review of a pure question of law by any court would give rise to

4

substantial constitutional questions."), because the 30-day statute of limitations period to file a petition for review with the appropriate Court of Appeals undermines the requirement that there be an adequate and effective substitute for the writ of habeas corpus. The Petitioners argue that, at the moment the REAL ID Act was signed into law, the Petitioners' right to file a petition for habeas corpus to seek judicial review was suspended because 30 days had already elapsed since the orders of removal in each case. Alternatively, the Petitioners ask this Court to provide a reasonable time after the effective date of the REAL ID Act — i.e., a grace period — whereby their petitions for review would be deemed timely despite having been filed beyond 30 days after the issuance of the order of removal in their cases. The motions to dismiss in all three cases are grounded on the Government's contention that this Court is without jurisdiction to hear the Petitioners' untimely challenges to the Board of Immigration Appeals's ("BIA") removal orders, given that the Petitioners each failed to file a petition for review within 30 days after the issuance of the order of removal. In April 2007, amicus counsel filed a brief on behalf of the Petitioners arguing that: (1) this Court should establish a grace period for petitions for review of final orders of removal that became final prior to the enactment of the REAL ID Act; (2) the REAL ID Act violates the Suspension Clause of the Constitution because it is not an adequate substitute for habeas corpus; and (3) this Court should apply equitable tolling to the 30-day period prescribed in § 1252(b)(1) to take jurisdiction over the petitions for review.

For the reasons that follow, we conclude that the Suspension Clause is not violated by the REAL ID Act but that a grace period of 30 days from the effective date of the Act should be afforded to those whose petitions were rendered untimely by the provisions of the Act. Following the enactment of the REAL ID Act and pursuant to 8 U.S.C. § 1252(b)(1), a petitioner

5

must file a petition for review challenging a final order of removal within thirty days of the BIA's issuance of that order. We have previously held that this deadline is jurisdictional and not subject to equitable tolling. Malvoisin v. INS, 268 F.3d 74, 75–76 (2d Cir. 2001). We adhere to that holding, and we now hold that in a case where a final order of removal was issued by the BIA prior to the enactment of the REAL ID Act, a petition for review will be considered timely filed if filed within thirty days of May 11, 2005 — the date of the enactment of the REAL ID Act — or June 10, 2005.

**BACKGROUND**

I.      Ruiz-Martinez, No. 05-2903-ag

By Order to Show Cause dated April 1, 1994, the former Immigration and Naturalization Service ("INS") charged Jose Luis Ruiz-Martinez ("Ruiz-Martinez"), a native and citizen of Mexico, with being subject to deportation from the United States and ordered him to show cause as to why he should not be deported because he had entered the United States without inspection, in violation of section 24(a)(1)(B) of the Immigration and Nationality Act ("Entry Without Inspection") (hereinafter "INA"). Ruiz-Martinez admitted, by written pleadings dated October 19, 1994, the allegations contained in the Order to Show Cause, and he submitted an application for suspension of deportation and an application for voluntary departure, pursuant to sections 244(a) and 244(e) of the INA, respectively. Represented by counsel Eric Copland ("Copland"), Ruiz-Martinez testified in support of his applications at his individual removal hearing in February 1995.

At the conclusion of the removal proceedings, the Immigration Judge ("IJ") denied Ruiz-Martinez's applications for relief and ordered him removed as charged. The IJ found that Ruiz-

Martinez was statutorily ineligible for suspension of deportation because he failed to show that he was a person of good moral character, as he had "knowingly assisted his wife and child in entering the United States in violation of law," and because he did not show that deportation would cause him extreme hardship. Finally, the IJ denied Ruiz-Martinez's application for voluntary departure because he had assisted another alien in entering the United States illegally.

With the assistance of attorney Copland, Ruiz-Martinez timely filed a notice of appeal to the BIA and indicated his intention to file a brief in support of his appeal. In March 1998, the BIA issued a briefing schedule to attorney Copland, allowing him until April 8, 1998, to submit a brief. However, Ruiz-Martinez had retained new counsel, Alfonso F. Ramos ("Ramos"), who, by letter dated April 7, 1998, informed the BIA that he had been substituted as counsel for Ruiz-Martinez and requested an extension of time to file his brief. The record demonstrates that Ramos did not file a brief with the BIA.

On February 9, 2001, the BIA summarily dismissed Ruiz-Martinez's appeal, finding that he had failed to allege any error in the IJ's opinion, and, further, that his failure to file a brief supported dismissal. Ruiz-Martinez again retained new counsel, Frederick P. Korkosz ("Korkosz"), who, in August 2003, submitted to the BIA a motion to reopen Ruiz-Martinez's proceedings, claiming that Ruiz-Martinez had not received notice of the BIA's dismissal of his appeal. In November 2003, the BIA construed Ruiz-Martinez's filing as a motion to reissue its decision and granted the motion, indicating that its previous order had been erroneously sent to Ruiz-Martinez's previous attorney and, therefore, that the Order had not been properly served. The BIA further suggested that Ruiz-Martinez file a separate motion to reopen for the purpose of submitting new evidence. Ruiz-Martinez did not file a petition for review of the reissued

7

decision. Instead, in January 2004, Ruiz-Martinez, through attorney Korkosz, filed a motion to reopen, alleging that he had received ineffective assistance of counsel because his previous counsel, Ramos, did not file an appellate brief with the BIA on his behalf. Ruiz-Martinez also requested that the BIA withhold decision until such time that he could review the record, including the audio recordings, and present, inter alia, evidence that the IJ's determination that Ruiz-Martinez had admitted to assisting his wife in illegally entering the United States was wrong or misinterpreted. Ruiz-Martinez further indicated that because of a miscommunication with prior counsel, his earliest opportunity to obtain a transcript was December 29, 2003. Finally, Ruiz-Martinez also sought to present new evidence of the hardship that he and his son would face if he were to be deported to Mexico.

By Order dated February 23, 2004, the BIA denied the motion to reopen. The BIA found that: (1) Ruiz-Martinez had not complied with the requirements set forth in Matter of Lozada, 19 I & N Dec. 637 (B.I.A. 1988), for making an ineffective assistance of counsel claim; (2) a claim based on the failure to file a brief was not a "per se ineffectiveness claim" exempt from the Lozada requirements because the alien was still required to show actual prejudice, and Ruiz-Martinez, in his January 2004 motion to reopen, had not even attempted to demonstrate such prejudice; (3) there was no reason for allowing more time to supplement the motion because Ruiz-Martinez and his new counsel, who entered a notice of appearance in August 2003, had been provided with ample time to review the record by way of a request with the BIA's clerk's office; and (4) the new evidence did not show that Ruiz-Martinez would suffer "extreme hardship over and above the normal economic and social disruptions involved in deportation."

On May 13, 2005, Ruiz-Martinez, through attorney Mark T. Kenmore ("Kenmore"), filed

a 28 U.S.C. § 2241 petition in the Western District of New York, challenging the BIA's denial of his motion to reopen.  On June 1, 2005, the District Court transferred the petition to this Court, construing that § 2241 petition as a petition for review, pursuant to the REAL ID Act of 2005, which had been signed into law just two days prior to the filing of Ruiz-Martinez's § 2241 petition.

On June 12, 2006, the Government filed its motion in this Court to dismiss Ruiz-Martinez's petition for lack of jurisdiction, arguing that the district court had no power to transfer the petition because it was filed after May 11, 2005, the effective date of the REAL ID Act.  Ruiz-Martinez's counsel, Kenmore, apparently in response to the Government's motion, filed a motion on July 31, 2006 requesting that we consider the habeas petition, filed on May 13, 2005, as a petition for review timely filed.  However, Kenmore's brief addressing the merits of the underlying claim does not directly address the timeliness of Ruiz-Martinez's petition for review.

On September 26, 2006, this Court issued an Order deferring consideration of the motion to dismiss, appointing amicus counsel, and directing the parties to address whether the REAL ID Act violated the constitutional prohibition against the suspension of the writ of habeas corpus.

On January 26, 2007, we appointed Megan Brackney as amicus curiae for Ruiz-Martinez, to:

> provide briefing on whether the application of the 30-day filing deadline, under 8 U.S.C. § 1252(b)(1), to the transferred § 2241 petition, originally filed in the district court two days after the enactment of the REAL ID Act of 2005, Pub L. No. 109-13, § 106, 119 Stat. 231, would amount to an unconstitutional suspension of the writ of habeas corpus.

By Order entered January 29, 2007, this Court also granted Kenmore's motion to withdraw as

counsel for Ruiz-Martinez and stayed the case for 60 days in order to allow Ruiz-Martinez to obtain new counsel. However, it does not appear that Ruiz-Martinez ever retained new counsel.

In April 2007, amicus counsel filed a brief, arguing that: (1) if applied without qualifications, the REAL ID Act violates the Suspension Clause of the Constitution because it is not an adequate substitute for habeas corpus; (2) we should establish a grace period for petitions for review of final orders of removal that became final prior to the enactment of the REAL ID Act; or in the alternative (3) we should apply equitable tolling to the 30-day period prescribed in § 1252(b) to take jurisdiction over Martinez-Ruiz's petition for review.

II.    Williamson v. Gonzales, No. 05-3662-ag

Flynn Williamson ("Williamson"), a native and citizen of Guyana, was admitted to the United States in August 1985 as a Lawful Permanent Resident. In March 2002, Williamson pleaded guilty in New York state court to criminal possession of a weapon in the second degree and was sentenced to four years in prison. In August 2002, the Government issued Williamson a Notice to Appear, charging him as being removable for having been convicted of an aggravated felony for which a term of imprisonment of at least one year was imposed and for having been convicted of a firearms offense. In April 2003, Williamson filed an application for asylum, withholding of removal, and CAT relief, claiming that he feared that he would be persecuted and tortured on account of his race, political opinion, and status as a deportee if he were removed to Guyana.

At Williamson's removal hearing on January 31, 2003, the IJ found that Williamson was not eligible for asylum because he had committed an aggravated felony, citing 8 U.S.C. § 1227(a)(2). Williamson's attorney argued that the crime for which Williamson had been

10

convicted was not an aggravated felony. The IJ rejected that argument and found Williamson removable based on the aggravated felony conviction as alleged in the Notice to Appear. The IJ found, however, that because Williamson had not been sentenced to a term of imprisonment of at least five years, his offense did not automatically qualify as a "particularly serious crime," pursuant to 8 U.S.C. § 1231(b)(3)(B)(ii), which would preclude him from seeking withholding of removal under both § 1231(b)(3) and the CAT.[3] The IJ further determined that because of the circumstances of the crime, which was committed in self-defense, it was not "particularly serious," and Williamson was entitled to a hearing on his petition for withholding and CAT relief. The IJ subsequently granted Williamson's petition for withholding, finding it more likely than not that he would be persecuted on a protected ground if he were removed to Guyana. The IJ also granted Williamson's petition for CAT relief, finding it more likely than not that he would be tortured or killed in Guyana.

The Department of Homeland Security ("DHS") appealed the IJ's decision to the BIA on August 11, 2003. In its brief to the BIA, DHS argued that the IJ had erred in concluding that Williamson's offense of criminal possession of a weapon in the second degree was not a particularly serious crime. DHS further argued that the IJ erred in granting Williamson CAT relief because Williamson had not met his burden of proving that it was more likely than not that

---

[3] An alien is not entitled to withholding of removal if "the alien, having been convicted by a final judgment of a particularly serious crime is a danger to the community of the United States." 8 U.S.C. § 1231(b)(3)(B)(ii). "An alien who has been convicted of an aggravated felony (or felonies) for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years shall be considered to have committed a particularly serious crime." Id. § 1231(b)(3)(B). However, this provision does not "preclude the Attorney General from determining that, notwithstanding the length of sentence imposed, an alien has been convicted of a particularly serious crime." Id.

he would be tortured upon removal to Guyana. Williamson filed a response brief, arguing that the IJ had correctly concluded that Williamson had not been convicted of a particularly serious crime and that the IJ had properly found that Williamson was entitled to CAT relief.

On October 6, 2003, the BIA issued a decision in Williamson's case reversing the decision of the IJ and ordering Williamson removed to Guyana. The BIA found that the IJ had erroneously concluded that Williamson was eligible for withholding of removal because "possession of a loaded firearm with intent to use the firearm unlawfully against another clearly demonstrates a propensity for violence," and Williamson had, therefore, been convicted of a "particularly serious crime." The BIA further found that the IJ's determination that Williamson had satisfied his burden of proof with respect to his CAT claim was clearly erroneous. The BIA noted that Williamson had presented no documentary evidence that criminal deportees are tortured upon their return to Guyana. Moreover, the BIA stated that the Guyanese laws placing certain restrictions on deportees, about which Lawrence Houston, a former diplomat from Guyana, had testified before the IJ, do not authorize torture. With respect to Houston's testimony about the death of his son, the BIA found that Houston had testified that his son had been killed by the police and that his son was a deportee but had not stated that his son was killed because he was a deportee. The BIA further determined that the evidence indicated Houston's son was killed "after an incident with the police involving a pistol."

The BIA also found that the record did not establish that Williamson would be tortured based on his or his parents' support for the opposition political party in Guyana. The BIA held that "the respondent's alleged support of the opposition party is not supported by the record" and that there was no evidence that any of Williamson's family members had been subjected to harm

12

on the basis of political affiliation. Finally, the BIA concluded that Williamson had not established that it was more likely than not that he would be tortured due to his Afro-Guyanese ethnicity. While the BIA acknowledged that the record revealed the existence of tension between the Indo-Guyanese and the Afro-Guyanese populations, it concluded that there was no indication that government officials tortured individuals or acquiesced in their torture because they were of Afro-Guyanese ethnicity.

On July 14, 2005, Williamson, represented by counsel, filed in the United States District Court for the Eastern District of New York a § 2241 petition challenging the removal order issued by the BIA on October 6, 2003. The petition for habeas corpus was dated May 2, 2005, but the file stamp indicated that it was filed on July 14, 2005. Thereafter, the District Court transferred the petition to this Court pursuant to the REAL ID Act, and the petition for habeas corpus was accordingly docketed in this Court as a petition for review.

On or about October 27, 2006, the Government filed a motion to dismiss Williamson's petition for review as, inter alia, untimely filed. On December 6, 2006, this Court issued an Order deferring consideration of the motion to dismiss, appointing Megan Brackney amicus counsel, and directing the parties to address whether the REAL ID Act violates the constitutional prohibition against the suspension of the writ of habeas corpus.

In his brief to this Court addressing the merits of his claims, Williamson argued that the BIA's "cavalier reversal" of the IJ's grant of withholding of removal and CAT relief violated his due process rights. Williamson argued that his right to a fair and meaningful hearing was violated by the BIA's reversal of the IJ's decision "without compelling reasons to do so." He further argues that the BIA's reversal of the IJ's grant of CAT relief was arbitrary and irrational

13

and not supported by substantial evidence.

In its responsive brief, the Government argued that this Court is precluded by 8 U.S.C. § 1252(a)(2)(c) from exercising jurisdiction over Williamson's challenge to the merits of the BIA's decision because he does not present a constitutional claim or question of law. The Government further contended that Williamson is merely quarreling with the BIA's fact-finding determinations and weighing of the evidence and is essentially contending that the BIA's decision was not supported by substantial evidence. Williamson's December 2006 brief on the merits failed to address the timeliness of his petition.

In his reply brief, Williamson argued that he is not asking this Court to review the BIA's fact finding but rather to "determine that the BIA's reversal is irrational and contrary to law." He further argues that he is asking this Court to determine whether the BIA correctly applied the law to the facts, which he asserts is a question of law.

III.    Seoud v. BIA, No. 06-3605-ag

In February 1982, Elias Hilmi Seoud, a native and citizen of Lebanon, was admitted into the United States as a Lawful Permanent Resident. In March 1998, Seoud was convicted of burglary in the first degree in New York state court and sentenced to serve between nine and eighteen years in prison. Because of his criminal conviction, Seoud was placed in removal proceedings in September 2005 upon service of a Notice to Appear alleging that he was removable as a result of his aggravated felony conviction. Seoud subsequently applied in February 2006 for asylum, withholding of removal, and CAT relief.

Seoud represented himself at his merits hearing before an IJ. He testified that he was born in Beirut in 1964, that his family are Christians, and that he came with his brother and

14

mother to the United States to live as a Lawful Permanent Resident in 1982. When the IJ asked what he believed would happen if he returned to Lebanon, Seoud replied that he would probably be killed by "all them terrorist people back home" because he had lived in the United States for 24 years.[4] Seoud specifically identified "[t]he Shiites Muslims, the PLO Palestinian people. The terrorists. . . . Syria" when asked who he thought would kill him if he returned to Lebanon. Seoud also recounted his experiences as a boy in Lebanon during the Civil War. He gave particularly detailed and graphic testimony about the bombing of the school he attended in 1975. Seoud witnessed "body parts flying everywhere" and "[b]lood splattered on the walls" and was himself injured in the leg by a piece of shrapnel before he managed to flee the building with his older brother. He also recalled riding in a taxi cab with his mother and brothers and passing through roadblocks in order to reach the United States Embassy in West Lebanon. He testified that officers were checking IDs at the roadblocks and that he was terrified because officers were known to kill Christians on the spot and he had personally seen them "spray people on the wall."[5] Seoud told the IJ that he still had flashbacks about his experiences in Lebanon and that he had turned to drugs and alcohol to "ease his pain." He further stated that he would never have

---

[4] At his hearing, Seoud did not explain why the mere fact that he spent 24 years in the United States would endanger him if he returned to Lebanon. Presumably, Seoud meant that terrorist elements in Lebanon would view him as sympathetic to the United States and target him on that basis, but he never stated this during the proceedings. In his Notice of Appeal to the BIA, Seoud did write that he was afraid to return to Lebanon "seeing that I am more American than Lebanese."

[5] Seoud testified that he follows the Roman Catholic faith. In his asylum application, Seoud stated that he feared he would be harmed or mistreated in Lebanon because he is Catholic. Seoud's testimony regarding the incident in the taxi cab indicates that he feared harm based on his Catholicism in 1970s Lebanon during the civil war. However, Seoud did not testify before the IJ that he feared returning to present-day Lebanon based on his religious beliefs.

15

committed his crime if he had not been under the influence of drugs and that he was currently recovering from his addiction.

On cross-examination, Seoud testified that he did not belong to any political organizations and had never been arrested, detained, or tortured in Lebanon. Seoud stated on his asylum application that his father had served in the Lebanese army for an unknown period of time. However, he testified that neither of his parents had belonged to any political organizations or been subjected to arrest, detention, or torture in Lebanon.

After hearing Seoud's testimony, the IJ denied his application in its entirety. First, the IJ found that Seoud was statutorily ineligible for asylum and withholding of removal under both 8 U.S.C. § 1231(b)(3) and the CAT because he had been convicted of a felony for which he had been sentenced to more than five years in prison, pursuant to INA §§ 208(b)(2)(B)(I), 208 (b)(2)(A)(ii), and 241(b)(3)(B)(ii). The IJ further found that Seoud failed to establish he would more likely than not be tortured if removed to Lebanon. The IJ noted that the none of the background materials regarding country conditions in Lebanon suggested individuals like Seoud who had spent extended periods of time in the United States were subjected to harm of any kind. Moreover, the IJ observed that the background materials indicate that the Lebanese government encourages the return to Lebanon of individuals who fled the country in the 1970s because of the civil war. Accordingly, the IJ concluded that Seoud was not eligible for deferral of removal under the CAT.

Following the issuance of the IJ's decision in February 2006 denying Seoud's requests for relief, finding that he was removable as a result of his conviction, and ordering him removed to Lebanon, Seoud, proceeding pro se, appealed the denial of his applications for relief to the

16

BIA. In his brief to the BIA, Seoud argued primarily that he was eligible for both cancellation of removal under 8 U.S.C. § 1229b(a) and a waiver of inadmissibility under 8 U.S.C. § 1182(c). He also argued that the IJ erred by failing to inform him that he was eligible for temporary protected status ("TPS")[6] under 8 U.S.C. § 1254.

On June 1, 2006, the BIA issued an order dismissing the appeal. First, the BIA agreed with the IJ that Seoud had failed to meet his burden of proof as to eligibility for deferral of removal under the CAT. The BIA further found that, due to his aggravated felony conviction, Seoud was ineligible for cancellation of removal. Moreover, the BIA concluded that Seoud was not eligible for a waiver of inadmissibility because his guilty plea came after the repeal of the provision that allowed waiver of inadmissibility due to his conviction. Finally, the BIA noted that Lebanon was not a designated country under the TPS program, and Seoud therefore was ineligible for temporary protected status.[7]

On July 31, 2006, Seoud, pro se and incarcerated, filed in this Court a petition for review of the BIA order issued on June 1, 2006. The petition was dated July 13, 2006, and it was accompanied by a motion seeking leave to proceed in forma pauperis and for appointment of counsel.

In September 2006, the Government filed a motion to dismiss the petition for review,

---

[6] Aliens who are nationals of certain foreign states and meet certain requirements designated by statute are eligible for temporary protected status. 8 U.S.C. § 1254a(c). Aliens who are granted temporary protected status may not be removed from the United States during the period in which that status is in effect. 8 U.S.C. § 1254a(a)(1)(A).

[7] Although Seoud did not challenge the denial of his CAT claim in his brief to the BIA, the BIA explicitly addressed it in its decision. Seoud's CAT claim therefore is considered exhausted, and we may review it. See Xian Tuan Ye v. DHS, 446 F.3d 289, 296–97 (2d Cir. 2006); Waldron v. INS, 17 F.3d 511, 515 n.7 (2d Cir. 1994).

17

arguing that this Court lacked jurisdiction over the petition because Seoud had failed to file it within the required time period. In December 2006, this Court issued an order deferring consideration of the motion to dismiss, appointing counsel, and directing the parties to address whether the REAL ID Act violates the constitutional prohibition against the suspension of the writ of habeas corpus.

In April 2007, Seoud, through counsel, filed an appellate brief, in which he argued, <u>inter alia</u>, that: (1) the REAL ID Act violates the Suspension Clause of the Constitution because it is not an adequate substitute for habeas corpus; and (2) this Court should apply equitable tolling to the 30-day period prescribed in § 1252(b)(1) to take jurisdiction over Seoud's petition for review. As to the merits of his petition, Seoud argued that the IJ and BIA erred by not adequately considering whether he would face torture if he returned to Lebanon. In the alternative, Seoud requests that this Court remand his case to the BIA for consideration of the impact of changed country conditions in Lebanon on his application for CAT relief. The Government filed a responsive brief on June 25, 2007, arguing that this Court lacks jurisdiction to consider Seoud's challenge to the IJ's denial of his application for CAT relief because Seoud was convicted of an aggravated felony and because he raises no constitutional claims or questions of law in his petition.

**ANALYSIS**

I.    The REAL ID Act and the Repeal of Habeas Relief

      A.    Applicable Law

      Under 8 U.S.C. § 1252(a), Congress provided for judicial review of final orders of removal issued by the BIA. Moreover, Section 1252(b)(1) states that "[w]ith respect to review

18

of an order of removal under [§1252(a)(1)], . . . [t]he petition for review must be filed not later than 30 days after the date of the final order of removal." 8 U.S.C. § 1252(b)(1). Prior to the enactment of the REAL ID Act, a non-criminal alien could seek judicial review of the BIA's decision through either (i) a petition for review, which was required to be filed within 30 days of the BIA's issuance of its final order of removal, pursuant to 8 U.S.C. § 1252(b)(1), or (ii) a habeas corpus petition filed pursuant to 28 U.S.C. § 2241, for which there was no time limit. See Luya Liu v. INS, 293 F.3d 36, 41 (2d Cir. 2002) (holding that non-criminal aliens could seek review of the agency's orders through either a petition for review or a § 2241 petition).

On May 11, 2005, Congress enacted the REAL ID Act, which, inter alia, directed that habeas petitions challenging orders of removal pending in a district court on that date were to be transferred to the appropriate Court of Appeals and construed as petitions for review. See REAL ID Act § 106(c). The REAL ID Act amended the Immigration and Nationality Act ("INA") to provide that petitions for review filed in the appropriate Courts of Appeals were to be the "sole and exclusive means for judicial review" of final orders of removal. See 8 U.S.C. § 1252(a)(5). Further, the REAL ID Act provided that the Act was effective immediately, and it applied to cases "in which the final administrative order of removal, deportation or exclusion was issued before, on or after" its effective date of May 11, 2005. See REAL ID Act § 106(b). The Act provided that the 30-day period of limitation prescribed in 8 U.S.C. § 1252(b)(1) did not apply to then-pending petitions for habeas corpus properly transferred to Courts of Appeals under the Act.

When the REAL ID Act became effective, then-pending petitions for habeas corpus were transferred to the appropriate Court of Appeals and converted into petitions for review:

19

> If an alien's case, brought under section 2241 of title 28, United States Code, and challenging a final administrative order of removal . . . is pending in a district court on the date of the enactment of this division, then the district court shall transfer the case . . . to the court of appeals for the circuit in which a petition for review could have been properly filed. . . .

REAL ID Act, § 106(c), 119 Stat. at 311; see also Marquez-Almanzar v. INS, 418 F.3d 210, 215 (2d Cir. 2005). The REAL ID Act speaks generally to the manner in which converted petitions are to be treated upon transfer here: "The [C]ourt of [A]ppeals shall treat the transferred case as if it had been filed pursuant to a petition for review under such section 242, except that subsection (b)(1) of such section shall not apply." REAL ID Act § 106(c), 119 Stat. at 311. Thus, converted petitions are to be treated as ordinary petitions for review in all respects except that the filing deadlines set forth in 8 U.S.C. § 1252(b)(1) for petitions for review are excused for pending cases.

B.      Whether Section 1252(b)(1) Violates the Suspension Clause

The date of the final order to be reviewed is the date of the decision of the BIA dismissing the appeal from the order of removal issued by an IJ. See 8 U.S.C. § 1101 (a)(47)(B)(I). Prior to the enactment of the REAL ID Act, we had determined that "compliance with the [30-day] time limit for filing a petition to review the BIA's final order is a strict jurisdictional prerequisite." Malvoisin v. INS, 268 F.3d 74, 75 (2d Cir. 2001). In the cases at bar, Petitioners claim that the REAL ID Act requires this Court to alter its interpretation of the 30-day filing deadline as a jurisdictional prerequisite. Specifically, Petitioners' argument is that because the REAL ID Act repeals habeas corpus jurisdiction over removal orders issued by the BIA, petitions for review are now the only mechanism for judicial review over the administrative action in these cases. Since that is so, Petitioners allege that bars to this Court's jurisdiction over

20

petitions for review would raise constitutional concerns under the Suspension Clause, at least in certain circumstances, such as those present in these cases. See U.S. Const. art. I, § 9, cl. 2; INS v. St. Cyr, 533 U.S. 289, 300 (2001) ("A construction of [the INA] that would entirely preclude review of a pure question of law by any court would give rise to substantial constitutional questions.").

The Suspension Clause of the Federal Constitution provides that "the Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2. "Because of that Clause, some judicial intervention in deportation cases is unquestionably required by the Constitution." St. Cyr, 533 U.S. at 300 (internal quotation marks omitted). It is well established, however, that "the substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus." Swain v. Pressley, 430 U.S. 372, 381 (1977); see Kuhali v. Reno, 266 F.3d 93, 100 (2d Cir. 2001) ("We do not doubt Congress' power to mandate adequate and effective substitutes for habeas review.").

Accordingly, if the review available in the Courts of Appeals under the REAL ID Act is an adequate and effective substitute for the writ, the Act does not violate the Suspension Clause. Although this Court has not yet addressed the question, other Circuits, with which we now join, have determined that the provision of the REAL ID Act at issue here is not unconstitutional because "it provides, through review by a federal court of appeals, an adequate and effective remedy to test the legality of an alien's detention." Alexandre v. U.S. Att'y Gen., 452 F.3d 1204, 1206 (11th Cir. 2006); see also Mohammed v. Gonzales, 477 F.3d 522, 526 (8th Cir. 2007)

21

(holding that, because the REAL ID Act "created [a] remedy as broad in scope as a habeas petition," the Act is "an adequate substitute" for habeas corpus); Puri v. Gonzales, 464 F.3d 1038, 1041 (9th Cir. 2006) (determining that the REAL ID Act "provided an adequate substitute for habeas proceedings"); see also Iasu v. Smith, 511 F.3d 881, 888–90 (9th Cir. 2007) (same). In De Ping Wang v. Dep't of Homeland Sec., 484 F.3d 615 (2d Cir. 2006), we wrote that "[i]t is possible that in some future case, the particular circumstances that prevented a petitioner from seeking review within the 30-day time limit of § 1252(b)(1) would require us to reexamine whether that limit ought to be treated as jurisdictional now that the petition for review is the exclusive means of obtaining "judicial intervention in deportation cases." 484 F.3d at 618–19 (internal quotation marks omitted). We now consider the "future case[s]" we presaged in De Ping Wang.

This Court faced a similar situation when, in 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which created a one-year statute of limitations for the filing of petitions for writs of habeas corpus under 28 U.S.C. §§ 2254 and 2255. See AEDPA, Pub. L. No. 104-132, 110 Stat. 1214 (effective April 24, 1996). In resolving the issue of suspension of the writ, we are faced with the question of whether the 30-day limitations period provided by the REAL ID Act is comparable to the one-year statute of limitations included in the AEDPA. In Lucidore v. New York State Div. of Parole, 209 F.3d 107 (2d Cir. 2000), this Court rejected a petitioner's argument that the one-year period was per se unconstitutional, finding that, because AEDPA's period of limitation provided the petitioner "with some reasonable opportunity to have [his] claims heard on the merits, the limitations period d[id] not render the habeas remedy 'inadequate or ineffective to test the legality of

22

detention.'" 209 F.3d at 113; see also Rodriguez v. Artuz, 161 F.3d 763, 764 (2d Cir. 1998) (affirming the dismissal of an untimely petition for a writ of habeas corpus as the one-year statute of limitations period did not constitute an unconstitutional suspension of the writ). However, we have not addressed what constitutes a "reasonable opportunity" in connection with the length of a limitations period that is sufficient for the habeas substitute to be considered both adequate and effective.

The 30-day time period applicable to an alien seeking judicial review of an administrative decision in his immigration proceeding is decidedly shorter than the one-year period available to inmates seeking review of their convictions under AEDPA. Petitioners argue here that, given the reality of the circumstances of many aliens subject to final orders of removal — language barriers, immigration detention, and the attendant difficulties that might affect a detained alien's opportunity to compose and file a petition for review — this 30-day period renders the judicial review available under the REAL ID Act inadequate to substitute for habeas corpus, and, thus, that the REAL ID Act is unconstitutional.

In Ross v. Artuz, 150 F.3d 97, 102–03 (2d Cir. 1998), we examined AEDPA's one-year period, and concluded that petitioners "should have been accorded a period of one year after the effective date of AEDPA in which to file a first § 2254 petition or a first § 2255 motion." In determining that such a grace period was appropriate, we stated that "where it is clear that Congress intended to foreclose suits on certain claims, '[t]he constitution . . . requires that statutes of limitations must allow a reasonable time after they take effect for the commencement of suits upon existing causes of action." Ross, 150 F.3d at 100 (quoting Block v. North Dakota ex rel. Bd. of Univ. and School Lands, 461 U.S. 273, 286 n.23 (1983)) (internal quotation marks

23

omitted); see also Terry v. Anderson, 95 U.S. 628, 632–33 (1877) ("[S]tatutes of limitation affecting existing rights are not unconstitutional, if a reasonable time is given for the commencement of an action before the bar takes effect."). Further, we explained that when adopting a new limitations period

> the legislature may specify the grace period during which the pertinent claims may be asserted following the statute's enactment, and if it does so, the grace period specified will generally provide the measure of the required reasonable time. If, however, the statute is silent as to the grace period to be allowed, the courts must fashion a grace period that is appropriate in view of the subject-matter.

Ross, 150 F.3d at 100 (internal quotation marks and citations omitted). In reaching our determination in Ross, we considered the previously unlimited time within which petitioners could seek § 2241 habeas corpus relief and the important due process implications of extinguishing existing habeas petitions and 28 U.S.C. § 2255 motions immediately upon the enactment of a statute. See id. at 102–03. We concluded that, "in light of Congress' selection of one year as the limitations period," the applicable grace period should also be one year. Id. at 103.

The question of a grace period in relation to the REAL ID Act was examined recently in Kolkevich v. Att'y Gen., 501 F.3d 323 (3d Cir. 2007). In Kolkevich, the petitioner was an aggravated felon and subject to the BIA's final order of removal on March 21, 2005. At the time that the REAL ID Act became law, on May 11, 2005, the 30-day time period for filing a petition for review had expired for the petitioner, and the petitioner had failed to file a petition for a writ of habeas corpus prior to passage of the REAL ID Act. The court noted that prior to the REAL ID Act, criminal aliens could not file petitions for review and could only raise questions of law through the filing of a habeas petition. However, after the Act was passed, the writ was no

24

longer available, and a criminal alien who had not filed a writ of habeas corpus prior to the passage of the Act would be denied judicial review: "To say that [a petitioner] could have filed before [the REAL ID Act] was passed simply does not address whether, after [the REAL ID Act] became law, [petitioner's] right to habeas had been replaced with an 'adequate and effective substitute.'" Kolkevich, 501 F.3d at 334. The Kolkevich court found that the legislative history of the Act clearly demonstrated that Congress's intent was to provide every alien — criminal or otherwise — with some form of judicial review:

> Additionally, the [REAL ID Act's] legislative history makes clear that, rather than intending it to deprive aliens of judicial review, Congress saw the Act as a vehicle by which it could ensure that all aliens received an equal opportunity to have their challenges heard. . . .
>
> Not only does the House Report demonstrate that Congress had no desire to deprive any alien of his or her right to judicial review of a removal order, it clearly indicates that Congress acted to preserve review for "every alien." Moreover, the House Report explicitly demonstrates Congress's intention to craft legislation that comported with the Suspension Clause as well as the holding in St. Cyr. In light of these exceedingly clear statements, and the ambiguity in the statutory scheme, we simply cannot say that Congress intended to risk running afoul of the Suspension Clause by suspending the writ of habeas corpus with respect to the small class of aliens who received final orders of removal more than 30 days prior to the enactment of [the REAL ID Act].

Id. at 335. In the House Report accompanying the REAL ID Act, Congress made clear that

> [u]nder section 106, all aliens who are ordered removed by an immigration judge will be able to appeal to the BIA and then raise constitutional and legal challenges in the courts of appeals. No alien, not even criminal aliens, will be deprived of judicial review of such claims. Unlike AEDPA and IIRIRA, which attempted to eliminate judicial review of criminal aliens' removal orders, section 106 would give every alien one day in the court of appeals, satisfying constitutional concerns. The Supreme Court has held that in supplanting the writ of habeas corpus with an alternative scheme, Congress need only provide a scheme which is an "adequate and effective" substitute for habeas corpus. Indeed, in St. Cyr . . . , the Supreme Court recognized that "Congress could, without raising any constitutional questions, provide an adequate substitute through the court of appeals." By placing all review in the courts of appeals, [the REAL ID Act]

25

would provide an "adequate and effective" alternative to habeas corpus.

H.R. Rep. No. 109-72, at 174–75, U.S. Code Cong. & Admin. News 2005, pp. 240, 299–300 (internal citations omitted) (emphasis added). The Third Circuit thus determined in Kolkevich that the at-issue provision of the REAL ID Act, § 106(c), should be read to permit the transfer from a district court to a Court of Appeals not only of those habeas petitions that were pending in the district court at the time the Act became law but also those that could have been brought in a district court prior to Act's enactment but were not. Kolkevich, 501 F.3d at 335. The Third Circuit further held that the 30-day time limit in 8 U.S.C. § 1252(b)(1) should not be interpreted as applying only to those aliens who received final orders of removal prior to the enactment of the REAL ID Act but who did not file a petition for review directly in a court of appeals until after the enactment of the REAL ID Act. See Kolkevich, 501 F.3d at 336.

As to the creation of a grace period, the Third Circuit in Kolkevich adopted a 30-day period:

> [W]e will provide pre-[REAL ID Act] claimants with the lesser of either the pre-or the post-[REAL ID Act] filing period. In this case, the pre-[REAL ID Act] filing period is the one applicable to § 2241 habeas petitions, which, as discussed, was infinite. The post-[REAL ID Act] filing period is the one applicable to petitions for review and is 30 days. Therefore, following Morton and Duarte, those in Kolkevich's situation shall be afforded 30 days from the date of [the REAL ID Act]'s enactment to bring their claims-that is, until June 1[0], 2005. Of course, this date has long passed. Only those who filed their petitions for review by that date will be allowed to proceed in this Court.
>
> We believe that this 30-day period is reasonable. As is made clear by the House Report, one of Congress's primary concerns in passing [the REAL ID Act] was to ensure that criminal aliens received the same type and amount of judicial review as other aliens. Were we to allow a grace period of longer than 30 days — for instance, six months or one year — a criminal alien who received his final order of removal on May 10, 2005 would receive more time to file his petition than a criminal alien, or even a non-criminal alien, ordered removed on May 12, 2005. This is exactly the sort of disparity that Congress sought to avoid by

26

passing [the REAL ID Act].

Kolkevich, 501 F.3d at 337.

For substantially the same reasons given by the Third Circuit in Kolkevich, we adopt a 30-day grace period to avoid any contravention of the Suspension Clause following the enactment of the REAL ID Act. As in Ross, we are adopting a grace period appropriate to the subject matter in light of Congress's selection of a limitations period and the constitutional requirement that statutes of limitation must allow a reasonable time after they take effect in which to commence law suits based on existing causes of action. We conclude that the REAL ID Act must be interpreted as having permitted an appropriate means for appeal and judicial review. Specifically, we hold that under the REAL ID Act, the 30-day time limit in 8 U.S.C. § 1252(b)(1) should be extended to afford a period of thirty days from the effective date of the REAL ID Act as a grace period for the filing of a petition for review by those who received final orders of removal prior to the enactment of the REAL ID Act but who did not file a petition for review until after the effective date of the Act.

C.      Whether Section 1252(b)(1) is a "Jurisdictional" Limitations Period

As to whether the 30-day period set forth in § 1252(b)(1) is jurisdictional in nature and what constitutional ramifications result by operation of the Suspension Clause, we hold today that the statutory limitations period set forth in § 1252(b)(1) is indeed jurisdictional in nature, as this Court has already held in Malvoisin. See 268 F.3d at 75–76; see also Iasu, 511 F.3d at 887–93. Despite the fact that Malvoisin was decided before the REAL ID Act was enacted, the REAL ID Act did not alter the language of § 1252(b)(1) or provide any equitable defenses to the strict 30-day filing period such as tolling. Therefore, we reject Petitioners' argument that the

27

applicable limitations period of 30 days is subject to equitable tolling.

Support for our holding comes from the Supreme Court's recent decision in Bowles v. Russell, 127 S. Ct. 2360 (2007), where the Court again examined whether a Court of Appeals has jurisdiction to entertain an appeal filed after the statutory limitations period (but within a period allowed by a district court's order). 127 S. Ct. at 2362. The Court ruled that when examining a "party's time period for filing an appeal beyond the period allowed by statute," it has "long and repeatedly held that the time limits for filing a notice of appeal are jurisdictional in nature." Id.; see also John R. Sand & Gravel Co. v. United States, 128 S. Ct. 750, 753 (2008) (citing Bowles with approval for the proposition that judicial efficiency is promoted by limitations periods that are jurisdictional in nature). In Bowles, a convicted prisoner filed a habeas petition following his unsuccessful challenge to his conviction and sentence on direct appeal. After entry of judgment by the district court denying his petition for habeas relief, Bowles had 30 days to file a notice of appeal with the Court of Appeals, Fed. Rule App. Proc. 4(a)(1)(A). Bowles, 127 S. Ct. at 2362. Bowles failed to file a timely notice of appeal. Nonetheless, the district court granted Bowles's motion pursuant to Rule 4(a)(6) to reopen the time period during which he could file a notice of appeal. Id. For reasons apparently unknown to the Supreme Court, the district court, in granting Bowles's motion to reopen, provided him 17 days to file a notice of appeal as opposed to the 14 additional days provided for by Rule (a)(4)(6) and 28 U.S.C. § 2107(c). Id.

Affirming the Court of Appeals's dismissal of the case for lack of jurisdiction, the Supreme Court first explained that the filing rule at issue in Bowles was derived from a statute, 28 U.S.C. § 2107(c), which described the district court's authority to reopen and extend the time

for filing a notice of appeal after the lapse of the usual 30 days. 127 S. Ct. at 2363. The Supreme Court observed that it "has long held that the taking of an appeal within the prescribed time is 'mandatory and jurisdictional.'" Id. (quoting Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 61 (1982) (per curiam)). Moreover, the Court noted how the Courts of Appeals "routinely and uniformly dismiss untimely appeals for lack of jurisdiction." Id. And, addressing any cases that could be arguably construed as holding to the contrary, the Court held: "Regardless of this Court's past careless use of terminology, it is indisputable that time limits for filing a notice of appeal have been treated as jurisdictional in American law for well over a century." Id. The Court grounded its approach in Congress's authority to prescribe the types of cases that courts may entertain and the manner in which they may do so:

> Because Congress decides whether federal courts can hear cases at all, it can also determine when, and under what conditions, federal courts can hear them. Put another way, the notion of "subject-matter" jurisdiction obviously extends to "classes of cases . . . falling within a court's adjudicatory authority," but it is no less "jurisdictional" when Congress forbids federal courts from adjudicating an otherwise legitimate "class of cases" after a certain period has elapsed from final judgment.

Bowles, 127 S. Ct. at 2365–66 (internal citations omitted); accord Grullon v. Mukasey, 509 F.3d 107 (2d Cir. 2007) (amended opinion issued Jan. 7, 2008). The Court noted that

> [i]f rigorous [filing] rules . . . are thought to be inequitable, Congress may authorize courts to promulgate rules that excuse compliance with the statutory time limits. Even narrow rules to this effect would give rise to litigation testing their reach and would no doubt detract from the clarity of the rule. However, congressionally authorized rulemaking would likely lead to less litigation than court-created exceptions without authorization.

127 S. Ct. at 2367.

In Grullon, this Court recently had the opportunity to apply Bowles in the context of the question of whether the REAL ID Act's provision requiring that a petition file an appeal with the

29

BIA before filing a petition for review with this Court was jurisdictional in nature. See 8 U.S.C. § 1252(d)(1). Grullon held that "as regards the requirement that petitioners appeal to the BIA, § 1252(d)(1) is jurisdictional." 509 F.3d at 110. We noted that "Bowles emphasized repeatedly that its reasoning was based on the statutory origin of the limitation, and thus made clear that limits expressed in statutes — as to time or "classes of cases — limit subject-matter jurisdiction." Id. (quoting Bowles, 127 S. Ct. at 2366 ("As we have long held, when an appeal has not been prosecuted in the manner directed, within the time limited by the acts of Congress, it must be dismissed for want of jurisdiction." (internal quotation marks omitted)); id. at 2365 (observing that the Supreme Court's treatment of its certiorari jurisdiction "also demonstrates the jurisdictional distinction between court-promulgated rules and limits enacted by Congress")).

* * *

Accordingly, we lack jurisdiction to entertain (i) any petition for review filed with this Court challenging a final order of removal issued by the BIA, pursuant to 8 U.S.C. § 1252(b)(1), beyond 30 days after the issuance of the order of removal, see Malvoisin v. INS, 268 F.3d 74, 75–76 (2d Cir. 2001); and (ii) in the case where a final order of removal was issued by the BIA prior to the enactment of the REAL ID Act, any petition for review filed more than 30 days after May 11, 2005 — the date of the enactment of the REAL ID Act — or June 10, 2005.

II. Application of the REAL ID Act to the Petitions Before Us

A. Ruiz-Martinez v. Mukasey, No. 05-2903-ag

Given the foregoing, we afford Petitioner Ruiz-Martinez, 05-2903, judicial review of his final order of removal by operation of the 30-day grace period. In this case, as in Ross, the adoption of the Act removed the option of an unlimited period for filing a petition for the writ of

30

habeas corpus and resulted in a greatly abbreviated period during which a petitioner may now seek judicial review. Because Ruiz-Martinez filed his § 2241 petition only two days after the enactment of the REAL ID Act, he benefits from a 30-day grace period based on the statutory limitations period now applicable — to wit, the 30-day period prescribed in § 1252(b)(2). Accordingly, we hold that we have jurisdiction of Ruiz-Martinez's petition for review, deny the Government's motion to dismiss the petition for review, and proceed hereafter to consider the merits of Ruiz-Martinez's claims.

B. Flynn Sean Williamson v. Mukasey, et al., No. 05-3662-ag

In this case, amicus counsel correctly argues that, prior to the enactment of the REAL ID Act, a Court of Appeals had no jurisdiction to review an order of removal where, as is the case here, that order was entered against an alien by reason of his conviction for an aggravated felony where the convicted alien did not challenge that categorization of his crime. See INA § 242(a)(2)(c)) (as amended by Pub. L. 104-208 (Sept. 30, 1996)). Accordingly, prior to May 11, 2005, the date of the enactment of the REAL ID Act, Williamson had no reason to file a petition for review. However, Williamson failed to file his § 2241 petition within 30 days of the enactment of the REAL ID Act and therefore cannot benefit from the grace period we have allowed. Wang, 484 F.3d at 616, 617–18 (holding that a habeas petition filed more than 30 days after the effective date of the REAL ID Act cannot be transferred to the Court of Appeals as a petition for review for lack of jurisdiction). As such, we conclude that we have no jurisdiction to entertain Williamson's petition for review, and application of the jurisdictional time limitation of § 1252(b)(1) for denying Williamson's petition for review as untimely results in no constitutional violation. We grant the Government's motion and dismiss the petition as untimely filed.

31

Because we lack jurisdiction to review Williamson's petition for review, the merits of Williamson's underlying claims for relief are not properly before us.

C.      Elias Seoud v. Board of Immigration Appeals, No. 06-3605-ag

We grant the Government's motion to dismiss for lack of jurisdiction Seoud's petition for review as untimely.  Seoud filed his petition for review on or about July 13, 2006, and, thus, failed to file his petition for review within the applicable jurisdictional 30-day statutory limitations period or the grace period allowed.

III.      Merits of Ruiz-Martinez's Petition for Review, No. 05-2903-ag

A.      Waiver

As an initial matter, Ruiz-Martinez was originally represented before this Court by attorney Kenmore, and the brief he submitted was seriously deficient.[8]  Indeed, in that brief, Kenmore waived all arguments regarding the merits of Ruiz-Martinez's case.[9]  After submitting his brief, Kenmore moved for and was granted leave to withdraw as counsel for Ruiz-Martinez. As Ruiz-Martinez now proceeds pro se, and in light of the understandable deficiency in prior counsel's brief, we construe his brief as having sufficiently made the arguments relevant to the issues raised by his claims.  See Weixel v. Board of Educ., 287 F.3d 138, 145–46 (2d Cir. 2002) (in the context of a motion to dismiss, construing pro se plaintiff's pleadings so as to raise "the

---

[8] Ruiz-Martinez first retained the services of Eric Copland, who represented him before the IJ.  He then retained Alfonso F. Ramos to appeal to the BIA, but Ramos apparently never received a copy of the decision from the BIA.  Ruiz-Martinez then retained Fred Korkosz, who filed a motion to reopen arguing Ramos's ineffective assistance.  It appears that Ruiz-Martinez then retained Kenmore for the appeal to our Court.

[9] Although amicus counsel has been appointed to address the timeliness of Ruiz-Martinez's petition, the merits of his case have never been addressed before this Court.

strongest arguments that they suggest").

B. Ineffective Assistance of Counsel

Even construing Ruiz-Martinez's argument as broadly as possible, we hold that the BIA did not abuse its discretion in denying Ruiz-Martinez's motion to reopen. While Ruiz-Martinez's motion to reopen claimed that his prior counsel's failure "to file a brief when required to do so clearly constitutes ineffective assistance of counsel," the BIA's finding that Ruiz-Martinez failed to meet the procedural requirements of a claim for ineffective assistance of counsel as set forth in Matter of Lozada was fatal to that motion. See Twum v. INS, 411 F.3d 54, 59 (2d Cir. 2005); Esposito v. INS, 987 F.2d 108, 111 (2d Cir. 1993) (citing Lozada, 19 I. & N. Dec. at 638). In Lozada, the BIA held that an individual seeking relief on the basis of ineffective assistance of counsel must submit: (1) an affidavit setting forth in detail the agreement with former counsel concerning what action would be taken and what counsel did or did not represent in this regard; (2) proof that the former counsel was notified of the allegations of ineffective assistance and allowed an opportunity to respond; and (3) if a violation of ethical or legal responsibilities is claimed, a statement as to whether the petitioner has filed a complaint with any disciplinary authority regarding counsel's conduct and, if not, an explanation for not doing so. 19 I & N Dec. at 639.

While this Court has held that a "slavish adherence" to Lozada is not required and that only "substantial compliance" is necessary, see Yi Long Yang v. Gonzales, 478 F.3d 133, 142–43 (2d Cir 2007), in the instant case, Ruiz-Martinez failed to show any compliance at all with Lozada's requirements. The affidavit submitted by Ruiz-Martinez did not set forth his

agreement with his prior attorneys concerning what actions would be taken or what they did or did not represent in this regard. Nor did Ruiz-Martinez submit proof that he notified his prior attorneys of his allegations of ineffective assistance, and the record does not show that his former attorneys are aware of those allegations. Moreover, he has not indicated whether he filed complaints with any disciplinary authorities regarding his former attorneys' alleged misconduct. Indeed, Ruiz-Martinez admitted in his motion that he was unsure which of his former attorneys had even rendered the ineffective assistance. While the BIA further buttressed its denial of Ruiz-Martinez's motion to reopen with other findings, including its determination that Ruiz-Martinez was not prejudiced by any ineffective assistance, we need not reach those alternate findings. Because a petitioner who has failed to comply substantially with the Lozada requirements forfeits his ineffective assistance of counsel claim in this Court, Ruiz-Martinez's petition for review of the BIA decision denying his motion to reopen must be denied in that respect. See Jian Yung Zheng v. U.S. Dep't of Justice, 409 F.3d 43, 47 (2d Cir. 2005).

C.      Suspension of Deportation

The BIA further determined that the evidence Ruiz-Martinez submitted with his motion to reopen in support of his application for suspension of deportation failed to establish extreme hardship sufficient to prevail on an application for suspension of deportation. However, we have previously held that this Court lacks jurisdiction to review a challenge to this type of discretionary finding. See Kalkouli v. Ashcroft, 282 F.3d 202, 204 (2d Cir. 2002) (applying § 309(c)(4)(E) of the IIRIRA transitional rules and finding that this Court lacked jurisdiction to review the agency's extreme hardship determination and resulting denial of suspension of deportation); see also De La Vega v. Gonzales, 436 F.3d 141, 143–44 (2d Cir. 2006) (holding

34

that this Court lacks jurisdiction to review the discretionary denial of cancellation of removal based on a lack of "exceptional and extremely unusual" hardship); 8 U.S.C. § 1252(a)(2)(B)(i). Likewise, this Court lacks jurisdiction to review the BIA's finding that the additional evidence Ruiz-Martinez submitted did not alter its determination that he failed to demonstrate "extreme hardship."

## CONCLUSION

In accordance with the foregoing, we deny the Petition for Review in 05-2903, and dismiss the Petitions for Review in 05-3662 and 06-3605.

35