**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MASSA SINGH,
                              *Petitioner,*

                    v.

MICHAEL B. MUKASEY, Attorney
General,
                              *Respondent.*

No. 05-74817

Agency No.
A92-293-501

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
March 10, 2008—San Francisco, California

Filed July 23, 2008

Before: Stephen Reinhardt, John T. Noonan, Jr. and
Raymond C. Fisher, Circuit Judges

Opinion by Judge Fisher

**COUNSEL**

Robert B. Jobe (argued) and Fatma Marouf, Law Offices of Robert B. Jobe, San Francisco, California, for the petitioner.

Patricia A. Smith (argued), Office of Immigration Litigation, Emily Anne Radford and Peter D. Keisler, Assistant Attorney General, Department of Justice, Washington, D.C., for the respondent.

**OPINION**

FISHER, Circuit Judge:

This appeal concerns the right of a criminal alien who was ordered removed before the enactment of the REAL ID Act of 2005 to obtain judicial review of his removal order after the Act became effective on May 11, 2005. Before the REAL ID Act, "criminal aliens" could obtain judicial review only through a habeas corpus petition filed with the district court. After the Act, these aliens — like all aliens — may obtain judicial review only through a petition for review in the court of appeals, and the petition must be filed within 30 days of the issuance of a final order of removal. Petitioner Massa Singh ("Singh") filed his current petition for review on August 17, 2005, more than two years after his order of removal became administratively final and more than three months after the REAL ID Act was enacted. The government argues that we lack jurisdiction to consider his untimely petition for review. For the reasons that follow, we hold that the REAL ID Act must be construed to give aliens whose removal order became final before the REAL ID Act a reasonable opportunity to obtain judicial review. However, we hold that aliens whose petitions were rendered untimely by the Act had a grace period of no more than 30 days from the effective date of the Act in which to seek such review. Because Singh's petition was filed more than 30 days after the REAL ID Act was signed into law, we dismiss his petition.

**I.**

Singh is a native and citizen of India who has been a legal permanent resident of the United States since 1990. In 2003, the Department of Homeland Security ("DHS") charged Singh with being a removable alien by reason of having committed an aggravated felony. *See* 8 U.S.C. § 1227(a)(2)(A)(iii) (providing for removal of an alien convicted of an aggravated

felony, as defined by § 1101(a)(43)(A)).[1] Singh disputed the charge of removability and applied for various forms of relief from removal, including relief under former Section 212(c) of the Immigration and Nationality Act, asylum and withholding of removal under the Act and the Convention Against Torture. The immigration judge ("IJ") sustained the charge of removal, finding that Singh had been convicted of an aggravated felony, and denied Singh any relief from removal. Singh appealed to the Board of Immigration Appeals ("BIA"), which affirmed in July 2004.

At the time the BIA dismissed Singh's appeal, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") stripped the courts of appeals of their jurisdiction to consider petitions for review brought by "criminal aliens," including individuals such as Singh. *See* Pub. L. No. 104-208, Div. C, § 306, 110 Stat. 3009-546, 3009-647, codified at 8 U.S.C. § 1252(a)(2)(C) (2000).[2] These aliens could, instead, obtain judicial review of their removal orders by filing a habeas corpus petition with the district court under 28 U.S.C. § 2241. *See INS v. St. Cyr*, 533 U.S. 289, 305-14 (2001). This bifurcated system meant that criminal aliens proceeded down one path to review and non-criminal aliens down another. The system's complexities were even greater for those aliens who disputed whether they were, in fact, properly ordered deported as criminal aliens. These aliens had to file a petition for review first, then the court of appeals would, in the exercise of its "jurisdiction to determine [its] own jurisdiction," decide whether the individual was, in fact, a criminal alien subject to the jurisdictional bar. *See Ye v. INS*,

---

[1]Hereinafter, all citations are to Title 8 of the United States Code unless otherwise noted.

[2]Section 1252(a)(2)(C) (2000) provided that "[n]otwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section . . . 1227(a)(2)(A)(iii) . . . of this title. . . ."

214 F.3d 1128, 1131 (9th Cir. 2000). Only after the petition for review had been dismissed for lack of jurisdiction could the alien then file a petition for habeas corpus in the district court and bring other legal challenges to his removal order. *See Acevedo-Carranza v. Ashcroft*, 371 F.3d 539, 542 (9th Cir. 2004).

After Singh's removal order became final, Singh dutifully started down this path to judicial review. In August 2004, he filed a timely petition for review in this court, arguing that his misdemeanor conviction for committing a lewd and lascivious act upon a child was not an aggravated felony for purposes of immigration law. On February 15, 2005, we held that Singh was an aggravated felon and dismissed his petition for review for lack of jurisdiction, citing IIRIRA's jurisdiction-stripping provisions. *Singh v. Gonzales*, No. 04-73907 (9th Cir. Feb. 15, 2005). Singh does not dispute that at that point he was free to file a habeas corpus petition in the district court at any time if he wished to make any legal or constitutional challenges to his order of removal. He did not do so. He was also not under any time pressure to do so. Habeas corpus petitions under § 2241, unlike petitions for review, may be filed by any individual "in custody under or by authority of the United States" and are not subject to a timely filing requirement. *See* 28 U.S.C. § 2241(c)(1).

So things stood for Singh until May 11, 2005, when President Bush signed into law the REAL ID Act of 2005 ("RIDA"), Pub. L. No. 109-13, Div. B, 119 Stat. 231, codified as amended at 8 U.S.C. § 1252. Section 106(a) of RIDA eliminated habeas corpus as an avenue of review for aliens seeking to challenge a final order of removal, making petitions for review in the courts of appeals the "sole and exclusive means for judicial review" of a removal order. *See* § 1252(a)(5). At the same time, Congress restored jurisdiction to the courts of appeals over petitions for review brought by criminal aliens, creating a unitary path of review for criminal and non-criminal aliens alike. *See* § 1252(a)(2)(D) (permitting review

of "constitutional claims or questions of law" raised by any alien in a petition for review); *see also Puri v. Gonzales*, 464 F.3d 1038, 1041-42 (9th Cir. 2006) (describing how RIDA created jurisdiction over criminal aliens' petitions for review). Importantly, however, Congress did not modify the requirement that petitions for review must be filed within 30 days of the issuance of a final order of removal by the BIA. *See* § 1252(b)(1).

RIDA ensured that on a forward-going basis, all aliens could obtain judicial review if they filed a petition for review within 30 days of their final order of removal. RIDA was less clear, however, in addressing the position of aliens who were caught up in the transition — namely, aliens such as Singh, whose orders of removal became final more than 30 days before RIDA, but who could not have filed a petition for review until after RIDA. Congress provided that all currently *pending* habeas corpus petitions should be transferred to the courts of appeals and treated as timely filed petitions for review, but it did not provide any mechanism for review for aliens who did not have a habeas corpus petition pending. *See* RIDA § 106(c). If the 30-day filing requirement were applied to Singh, his opportunity to seek judicial review was already foreclosed on the day RIDA became law. Congress therefore overnight moved Singh from the position of having an unlimited amount of time to seek review through a habeas corpus petition, to having no ability to seek review at all.

Finding his right to file a habeas corpus petition suddenly withdrawn, Singh sought to obtain review of his removal order in the Ninth Circuit Court of Appeals after RIDA became law in May 2005. On July 6, 2005, he asked us to recall our mandate on his previously dismissed petition for review, arguing that we should now exercise jurisdiction in light of RIDA. We ultimately denied his request to recall the mandate, but before we did, he filed a second petition for review on August 17, 2005, which is the one we consider here. In this petition he argues that RIDA provides us with

jurisdiction to consider his legal and constitutional claims against his removal order. He further argues that if RIDA does not provide such jurisdiction, he would be without any opportunity for judicial review of his removal order in violation of the Suspension Clause of the Constitution. He therefore urges us to read RIDA in a way that would preserve judicial review and avoid this constitutional pitfall.

## II.

## A.

**[1]** The Suspension Clause provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. 1, § 9, cl. 2. The Supreme Court has held that "[b]ecause of that Clause, some judicial intervention in deportation cases is unquestionably required by the Constitution." *St. Cyr*, 533 U.S. at 300 (internal quotation marks omitted). Judicial intervention need not occur through a writ of habeas corpus, however. Congress may eliminate the writ without running afoul of the Suspension Clause so long as it provides "a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention." *Swain v. Pressley*, 430 U.S. 372, 381 (1977); *see also St. Cyr*, 533 U.S. at 314 n.38 ("Congress could, without raising any constitutional questions, provide an adequate substitute [for habeas corpus] through the courts of appeals."). An adequate substitute for habeas corpus must fulfill the traditional role of the writ, which is to give the petitioner "a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation of relevant law.' " *Boumediene v. Bush*, 128 S. Ct. 2229, 2266 (2008) (quoting *St. Cyr*, 533 U.S. at 302). A petition for review with the court of appeals constitutes "an adequate substitute for district court habeas corpus jurisdiction." *Puri*, 464 F.3d at 1042; *see also Mohamed v. Gonzales*, 477 F.3d 522, 526 (8th Cir. 2007) (holding that a petition for review is "an adequate substitute"

for habeas corpus); *Alexandre v. U.S. Att'y Gen.*, 452 F.3d 1204, 1206 (11th Cir. 2006) (per curiam) (same).

**[2]** Whether RIDA created an adequate substitute for habeas corpus for those aliens to whom a petition for review *is* available, however, is different from whether RIDA created any adequate substitute for those aliens for whom it *is no longer* available. Unlike in previous cases where we have upheld RIDA against Suspension Clause challenges, Singh never had the ability to obtain judicial review of the merits of his removal through a petition for review filed within 30 days of his removal order. *Cf. Puri*, 464 F.3d at 1043; *Iasu v. Smith*, 511 F.3d 881, 888 (9th Cir. 2007) (holding that RIDA's elimination of habeas corpus does not violate the Suspension Clause where the petitioner "had a means for seeking relief (direct review) . . . . [and] simply failed to pursue the relief that the statutory scheme allows"). By the time RIDA created jurisdiction in this court over Singh's petition for review, more than 30 days had elapsed since his final order of removal was entered, and so his petition would appear barred by the timely filing requirement. *See* § 1252(b)(1).

The government argues that, in enacting RIDA, Congress simply did not intend that aliens such as Singh have a way of obtaining judicial review. The government notes that Congress provided a mechanism to transfer *pending* habeas petitions to the courts of appeals, indicating that Congress considered the plight of aliens whose time to file a petition for review had expired, and chose to protect only those who had already acted affirmatively to preserve their rights. *See* RIDA § 106(c). Singh argues, to the contrary, that Congress' express purpose in enacting RIDA was to provide *all* aliens with *some* mechanism for review of their constitutional and legal claims. Applying the 30-day timely filing requirement to bar his claim would both contravene Congress' intent as well as violate the Suspension Clause. He therefore suggests that we have jurisdiction to consider his petition for review, seemingly irrespective of when it was filed.

**[3]** Both the Second and Third Circuits have recently considered the exact question presented here. In *Kolkevich v. Att'y Gen.*, 501 F.3d 323, 335 (3d Cir. 2007), the Third Circuit concluded that depriving aliens such as Singh of all right to judicial review would "risk running afoul of the Suspension Clause," and that RIDA does not evince a clear intent to eliminate these aliens' right to review. The Second Circuit adopted the same analysis in *Ruiz-Martinez v. Mukasey*, 516 F.3d 102 (2d Cir. 2008). We now join these circuits in holding that RIDA should not be construed to have eliminated all possibility of judicial review for aliens, such as Singh, who did not have the opportunity to file a petition for review before RIDA. To accept that Congress eliminated habeas corpus without providing these aliens with any substitute for review would pose serious Suspension Clause concerns. *See St. Cyr*, 533 U.S. at 300.

**[4]** Contrary to the government's suggestion here, there is no clear language in the statute to suggest that "Congress took the extraordinary step of suspending the writ with respect to those who, like [petitioner], received final orders of removal more than 30 days prior to the Act's enactment." *Kolkevich*, 501 F.3d at 334. Rather, the RIDA amendments form a "patchwork of different statutes that, individually, have no direct effect on [petitioner's] appeal." *Id.* at 335. In particular, the 30-day timely filing requirement for petitions for review predated RIDA, and there is no indication that Congress intended this provision to block review for aliens who could not have obtained review before RIDA's enactment. Because RIDA does not "express a clear and unambiguous statement of Congress' intent" to deprive Singh of judicial review, we hold that RIDA does not foreclose that opportunity. *See St. Cyr*, 533 U.S. at 299-300 ("[I]f an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation is fairly possible, we are obligated to construe the statute to avoid such problems.") (internal quotation marks and citation omitted).

We draw support for this conclusion from the legislative history of RIDA. As the Third Circuit explained, "RIDA's legislative history makes clear that, rather than intending it to deprive aliens of judicial review, Congress saw the Act as a vehicle by which it could ensure that all aliens received an equal opportunity to have their challenges heard." *Kolkevich*, 501 F.3d at 335. The House Report accompanying RIDA states that

> [u]nder section 106, all aliens who are ordered removed by an immigration judge will be able to appeal to the BIA and then raise constitutional and legal challenges in the courts of appeals. *No alien, not even criminal aliens, will be deprived of judicial review* of such claims. Unlike AEDPA or IIRIRA, which attempted to eliminate judicial review of criminal aliens' removal orders, section 106 would give every alien one day in the court of appeals, satisfying constitutional concerns. The Supreme Court has held that in supplanting the writ of habeas corpus with an alternative scheme, Congress need only provide a scheme which is an 'adequate and effective' substitute for habeas corpus . . . . By placing all review in the courts of appeals, [RIDA] would provide an 'adequate and effective' alternative to habeas corpus.

H.R. Rep. No. 109-72, at 174-75, U.S. Code Cong. & Admin. News 2005, pp. 240, 299-300 (internal citations omitted) (emphasis added) (hereinafter "House Report"). This language makes clear that Congress not only intended to provide "*all* aliens" with a right to review, it also shows that Congress drafted RIDA to comply with the requirements of the Suspension Clause and the Supreme Court's holding in *St. Cyr. See id.* (emphasis added); *see also Kolkevich*, 501 F.3d at 335, *Ruiz-Martinez*, 516 F.3d at 117.

**B.**

**[5]** Our conclusion that RIDA should not be construed to deprive Singh of all right to judicial review does not, however, define the contours of that right. Even if Congress intended to allow a criminal alien to file a petition for review after the effective date of RIDA, this does not determine "*how much* time he should be afforded in which to do so." *Kolkevich*, 501 F.3d at 336. That Congress did not intend to extinguish Singh's right to obtain judicial review completely does not mean Congress intended to give him an unlimited amount of time in which he could seek it. In addressing this very question, the Third Circuit concluded that aliens for whom a petition for review was previously unavailable should have no more than a 30-day "grace period" from the enactment of RIDA — that is, until June 11, 2005 — in which they could file a petition for review. *See id.* at 337. The Second Circuit adopted a similar rule. *See Ruiz-Martinez*, 516 F.3d at 117.

**[6]** Congress may subject an alien's right to review to reasonable procedural limitations such as filing deadlines, which necessarily have the effect of cutting off the rights of those who do not act in a timely fashion. *See Stone v. INS*, 514 U.S. 386, 405 (1995); *Magtanong v. Gonzales*, 494 F.3d 1190, 1191 (9th Cir. 2007) (per curiam). "[V]ehicles for review . . . are not available indefinitely without limitation." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Even a constitutional right "may be forfeited . . . by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." *United States v. Olano*, 507 U.S. 725, 731 (1993) (quoting *Yakus v. United States*, 321 U.S. 414, 444 (1944)). Singh does not dispute that non-criminal aliens seeking judicial review before RIDA, and criminal aliens seeking review after RIDA, lose their right to review if they do not bring a timely petition for review, and that such a limitation on the availability of review is not inconsistent with the Suspension Clause.

**[7]** In determining what constitutes a reasonable window of time in which Singh should be allowed to bring his appeal, we are strongly influenced by Congress' desire in enacting RIDA to equalize the rights of criminal and non-criminal aliens and facilitate the removal of criminal aliens from the United States. In the House Report that accompanied RIDA, Congress criticized the bifurcated system of review that resulted from the Supreme Court's interpretation of IIRIRA in *St. Cyr*. Specifically, Congress noted that

> [a]mong the many problems caused by *St. Cyr*, the most significant is that this decision allows criminal aliens to delay their expulsion from the United States for years.
>
> Furthermore, because of *St. Cyr*, aliens who have committed serious crimes in the United States are generally able to obtain more judicial review than non-criminal aliens. . . . Not only is this result unfair and illogical, but it also wastes scarce judicial and executive resources.

House Report at 298-99. Thus if we were to allow a criminal alien such as Singh an unlimited amount of time to bring his petition for review, when a similarly situated non-criminal alien would have had only 30 days from the date of the final order of removal to bring his petition, we would frustrate Congress' purpose. Therefore, we join the Second and Third Circuits in holding that aliens in Singh's position should "be afforded 30 days from the date of RIDA's enactment to bring their claims — that is, until June 11, 2005." *Kolkevich*, 501 F.3d at 337; *see also Ruiz-Martinez*, 516 F.3d at 117.

**[8]** Applying this rule to Singh's case, we lack jurisdiction to consider his petition for review. Singh's present petition was filed on August 17, 2005, more than three months after RIDA was enacted. Singh urges us to adopt a different rule in his case, arguing that he had no notice that his petition for

review needed to be filed within 30 days of RIDA's enactment. The signing into law of RIDA on May 11, 2005, however, put Singh on sufficient notice that jurisdiction over his petition now rested with the court of appeals and that he would need to act promptly to obtain review. RIDA fundamentally changed the system of judicial review for criminal aliens, withdrawing habeas corpus from the district courts and restoring jurisdiction in the courts of appeals. Congress did not, however, amend the 30-day timely filing requirement, indicating that Congress still expected aliens to act quickly to preserve their rights. Yet Singh did not seek to recall the mandate on his first petition for review for nearly two months after RIDA, and did not file the current petition until nearly a month after that. We are not unsympathetic to the uncertainties Singh faced with RIDA's enactment, and are mindful of the efforts his counsel made to deal with them. Nonetheless, we believe the 30-day rule is reasonable and we cannot exempt Singh from its consequences. His petition for review was untimely, and must be dismissed for lack of jurisdiction. *See Kolkevich*, 501 F.3d at 337.

## III.

**[9]** Lastly, we reject Singh's suggestion that we have authority to construe his current petition for review as a petition for review nunc pro tunc, or as if it were filed on the date of his first petition in August 2004. "Nunc pro tunc signifies now for then, or in other words, a thing is done now, which shall have the same legal force and effect as if done at [the] time when it ought to have been done." *United States v. Allen*, 153 F.3d 1037, 1044 (9th Cir 1998) (quoting Black's Law Dictionary 964 (5th ed. 1979)). The doctrine is considered part of the "inherent power of the court to make its records speak the truth." *Id*. We have emphasized that the power is

> a limited one, and may be used only where necessary
> to correct a clear mistake and prevent injustice. It
> does not imply the ability to alter the substance of

> that which actually transpired or to backdate events to serve some other purpose. Rather, its use is limited to making the record reflect what the . . . court actually intended to do at an earlier date, but which it did not sufficiently express or did not accomplish due to some error or inadvertence.

*United States v. Sumner*, 226 F.3d 1005, 1009-10 (9th Cir. 2000) (internal quotation marks and citations omitted); *see also Transamerica Ins. Co. v. South*, 975 F.2d 321, 325 (7th Cir. 1992) (noting that "a nunc pro tunc order is typically used to correct clerical or ministerial errors," but as a general rule does not enable the court to make "substantive changes affecting parties' rights"). Singh's earlier petition was not dismissed through any clerical mistake or error of law, but rather was properly dismissed under the law as it existed at the time, as Singh himself concedes. Singh points to no authority to support his theory that we have authority to backdate his current petition for review to the date of his earlier, properly dismissed petition for review.

## CONCLUSION

Because Singh's petition for review was not brought within 30 days of the enactment of RIDA, we lack jurisdiction to consider his claims.

**DISMISSED**.