**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

VICTOR MANUEL PEREZ, AKA
Victor Perez,

*Petitioner*,

v.

WILLIAM P. BARR, Attorney General,
*Respondent.*

No. 16-71918

Agency No.
A087-446-901

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted February 14, 2019
Vacated October 7, 2019
Resubmitted April 20, 2020
Pasadena, California

Filed April 27, 2020

Before:  Consuelo M. Callahan and Andrew D. Hurwitz, Circuit Judges, and Edward R. Korman,[*] District Judge.[**]

Opinion by Judge Callahan

---

**SUMMARY**[***]

---

**Immigration / Pro Bono Compensation**

The panel denied petitioner's request for compensation at government expense of his court-appointed pro bono counsel in a petition for review of the Board of Immigration Appeals' denial of relief from removal, holding that there is no authority, including under the federal habeas statutes, the All Writs Act, and the Criminal Justice Act, requiring the government to compensate counsel for mentally incompetent petitioners in petitions for review under 8 U.S.C. § 1252(a).

Petitioner contended that because the Suspension Clause requires petitions for review under the REAL ID Act to serve as the functional equivalent of habeas petitions, the court can and should exercise its authority to appoint government-

---

[*] The Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

[**] Pursuant to Ninth Circuit General Order 3.2.h, Judge Hurwitz was drawn by lot to replace our late colleague Judge Raymond T. Fisher. Judge Hurwitz has reviewed the record and briefs in this case and listened to the oral argument before the prior panel.

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

compensated counsel under the Criminal Justice Act, 18 U.S.C. § 3006A, and other provisions of federal law that allow the court to do so in certain habeas petitions.

The panel agreed that a petition for review, in order to serve as an acceptable habeas substitute, must provide the petitioner a meaningful opportunity to demonstrate that he is being held pursuant to the erroneous application or interpretation of relevant law. The panel also assumed that there may be cases in which a mentally incompetent petitioner requires the assistance of counsel to seek meaningful review of a removal order, and that appointment of counsel may be necessary in such cases. However, the panel held that the Suspension Clause does not require government compensation of court-appointed counsel, at least as long as the court can obtain the assistance of competent pro bono counsel.

The panel recognized that the All Writs Act, 28 U.S.C. § 1651(a), provides this court with the inherent authority to appoint counsel when necessary to the exercise of its judicial function, but reasoned that the authority to appoint counsel is not coextensive with the authority to order compensation of such counsel, which is a specific imposition on the public fisc. The panel explained that under separation of powers principles, Congress, and not the judiciary, holds the power of the purse, and thus the authority to appoint counsel at the public's expense generally must emerge from a statutory authority established for that purpose.

The panel rejected petitioner's contention that such statutory authority is found in the All Writs Act, the habeas statutes, 28 U.S.C. § 2241 and § 2243, or the Criminal Justice Act. The panel therefore concluded that although the court has the inherent authority to appoint pro bono counsel,

it lacks the requisite statutory authority to order government compensation for his appointed counsel.

The panel addressed petitioner's remaining contentions in a separately and concurrently filed memorandum disposition.

## COUNSEL

Veronica Barba (argued), Lucas & Barba LLP, Los Angeles, California, for Petitioner.

Scott Grant Stewart (argued), Rosanne M. Perry and Rachel Browning, Trial Attorneys; Kohsei Ugumori, Senior Litigation Counsel; Emily Ann Radford, Assistant Director; Joseph H. Hunt, Assistant Attorney General; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

Stephen Kang, ACLU Foundation Immigrants' Rights Project, San Francisco, California; Ahilan T. Arulanantham and Jessica Karp Bansal, ACLU of Southern California, Los Angeles, California; for Amici Curiae ACLU Immigrants' Rights Project and ACLU of Southern California.

**OPINION**

CALLAHAN, Circuit Judge:

Victor Manuel Perez, a native and citizen of Mexico, petitions for review of a final removal order of the Board of Immigration Appeals (BIA) denying his applications for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). In the agency proceedings, an immigration judge (IJ) deemed Perez mentally incompetent to proceed pro se and provided a Qualified Representative (QR) in the form of legal counsel to represent Perez in his removal hearing and appeal to the BIA. Perez then asked this court to appoint him compensated counsel to represent him in connection with his petition for review from the BIA's order. We in turn appointed pro bono counsel for Perez. The issue for decision is whether we can and should order the government to compensate appointed counsel for her services in representing Perez before this court. Because Perez and his amici curiae identify no authority allowing us to order the government to do so, we deny the request for compensation.

I.

The Department of Homeland Security (DHS) initiated removal proceedings against Perez in 2013. At Perez's first appearance, the IJ ordered a competency inquiry. DHS later filed a Notification Pursuant to the Notice Criteria in the *Franco-Gonzales* Class Action[1] based on evidence of

---

[1] The *Franco-Gonzales* litigation was a class action on behalf of "mentally disabled immigrant detainees who are held in custody without counsel," asserting that they were entitled to appointed counsel under the Immigration and Nationality Act (INA), the Rehabilitation Act, and the Due Process Clause. *See Franco-Gonzales v. Holder*, 767 F. Supp. 2d

Perez's mental health diagnoses.  In March 2014, the IJ
found that Perez was not competent to represent himself and
appointed government-contracted legal counsel to be
Perez's QR in the removal proceedings.**[2]**  With counsel's

---

1034, 1038 (C.D. Cal. 2010).  In December 2010, the district court issued
a preliminary injunction, finding that plaintiffs were entitled to
representation in the form of a QR as a reasonable accommodation under
the Rehabilitation Act, and enjoining DHS

> from pursuing further immigration proceedings
> against Plaintiffs until such time as (i) Plaintiffs are
> afforded a Qualified Representative(s) who is willing
> and able to represent Plaintiffs during all phases of
> their immigration proceedings, including appeals
> and/or custody hearings, whether *pro bono* or at
> Defendants' expense, and (ii) after the implementation
> of a briefing schedule to be mutually agreed upon by
> the parties in the underlying BIA proceedings.

*Id*. at 1061.

After issuing a similar injunction for an additional plaintiff, *see
Franco-Gonzales v. Holder*, 828 F. Supp. 2d 1133, 1149–50 (C.D. Cal.
2011), and granting class certification, *see Franco-Gonzales v.
Napolitano*, No. CV 10-02211 DMG (DTBx), 2011 WL 11705815,
at \*16 (C.D. Cal. Nov. 21, 2011), the district court granted partial
summary judgment in favor of the certified class and entered a
permanent injunction in April 2013, *Franco-Gonzales v. Holder*, No. CV
10-02211 DMG (DTBx), 2013 WL 3674492, at \*20 (C.D. Cal. Apr. 23,
2013).  The government did not appeal those orders.

**[2]** In 2013, the Executive Office for Immigration Review (EOIR)
launched the National Qualified Representative Program (NQRP), "a
nationwide program to provide Qualified Representatives (QRs) to
certain unrepresented and detained respondents who are found by an
Immigration Judge or the BIA to be mentally incompetent to represent
themselves in immigration proceedings."  U.S. Department of Justice,
Executive Office of Immigration Review, *National Qualified
Representative Program (NQRP)*, https://www.justice.gov/eoir/national

assistance, Perez applied for asylum, withholding of removal, and CAT relief. After the IJ issued a written decision denying Perez's applications for relief, Perez timely appealed to the BIA with the assistance of his QR. The BIA adopted and affirmed the IJ's decision and dismissed Perez's appeal.

Perez, with the assistance of his QR, then filed a pro se petition for review and a motion to proceed in forma pauperis before this court. His counsel also filed a motion to be appointed under the federal habeas statute, 28 U.S.C. § 2241, or the Criminal Justice Act (CJA), 18 U.S.C. § 3006A(a)(2)(B), to represent Perez in this petition for review. A motions panel of our court granted Perez's motion to proceed in forma pauperis but denied counsel's motion for statutory appointment. However, concluding that our review would benefit from the appointment of pro bono counsel, the panel asked Perez's counsel whether she would accept appointment under the Ninth Circuit's pro bono program; if not, the panel stated, other pro bono counsel would be appointed. Perez's counsel accepted the pro bono appointment but requested that the denial of her motion be without prejudice to arguing before the merits panel that Perez was entitled to compensated counsel. The panel granted the request.

## II.

Perez and amici argue that we have authority under the federal habeas statute, the All Writs Act, and the CJA, as informed by the Suspension Clause, to appoint and

-qualified-representative-program-nqrp (last updated Feb. 18, 2020). "EOIR carries out the NQRP through effort of federal staff and a contract." *Id*.

compensate counsel for mentally incompetent petitioners in petitions for review under 8 U.S.C. § 1252(a). According to Perez, because the Suspension Clause requires petitions for review under the REAL ID Act to serve as the functional equivalent of habeas petitions, we can and should exercise our authority to appoint him government-compensated counsel under the Criminal Justice Act and other provisions of federal law that allow us to do so in certain habeas petitions. These claims raise questions of law that we address de novo. *See Montes-Lopez v. Gonzales*, 486 F.3d 1163, 1165 (9th Cir. 2007).

## A.

The Suspension Clause provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. 1, § 9, cl. 2. The Clause "ensures that, except during periods of formal suspension, the Judiciary will have a time-tested device, the writ, to maintain the 'delicate balance of governance' that is itself the surest safeguard of liberty" and "protects the rights of the detained by affirming the duty and authority of the Judiciary to call the jailer to account." *Boumediene v. Bush*, 553 U.S. 723, 745 (2008) (citations omitted). Congress may not "eliminate the writ without running afoul of the Suspension Clause" unless it "provides 'a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention.'" *Singh v. Mukasey*, 533 F.3d 1103, 1106 (9th Cir. 2008) (quoting *Swain v. Pressley*, 430 U.S. 372, 381 (1977)). The Suspension Clause's guarantee applies to the immigration context; the Supreme Court has held that "some 'judicial intervention in deportation cases' is unquestionably 'required by the Constitution.'" *INS v. St.*

*Cyr*, 533 U.S. 289, 300 (2001) (quoting *Heikkila v. Barber*, 345 U.S. 229, 235 (1953)).

There are "few precedents addressing what features an adequate substitute for habeas corpus must contain," and *Boumediene* declined "to offer a comprehensive summary of the requisites for an adequate substitute for habeas corpus." 553 U.S. at 772, 779. *Boumediene*, however, did highlight two "easily identified attributes of any constitutionally adequate habeas corpus proceeding." *Id.* at 779. First, "the privilege of habeas corpus entitles the prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Id.* (quoting *St. Cyr*, 533 U.S. at 302). Second, "the habeas court must have the power to order the conditional release of an individual unlawfully detained— though release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted." *Id.*

After Congress enacted prohibitions on judicial review of removal orders in the 1996 amendments to the Immigration and Nationality Act, the Supreme Court concluded that the Act did not repeal federal habeas jurisdiction given the "serious Suspension Clause issue" that would arise "if we were to accept the INS' submission that the 1996 statutes have withdrawn [the power of habeas review] from federal judges and provided no adequate substitute for its exercise." *St. Cyr*, 533 U.S. at 305. "*St. Cyr* left instructions for both Congress and the lower courts, with a view to conform with the requirements of the Suspension Clause: Congress was required to provide adequate and effective review for all aliens subject to removal" and courts "are required to interpret congressional enactments restricting the right to review consistent with the

mandates of the Suspension Clause." *Ramadan v. Gonzales*, 479 F.3d 646, 653 (9th Cir. 2007) (per curiam).

In response, Congress enacted the REAL ID Act of 2005, which eliminated habeas corpus jurisdiction over final orders of removal, making petitions for review before the courts of appeal "the sole and exclusive means for judicial review" of such orders. 8 U.S.C. § 1252(a)(5). We have held the REAL ID Act does not violate the Suspension Clause because a petition for review under § 1252(a)(5) is "an adequate substitute for habeas proceedings." *Puri v. Gonzales*, 464 F.3d 1038, 1041 (9th Cir. 2006). We explained that "if a substitute remedy provides the same scope of review as a habeas remedy, it is adequate and effective." *Id.* at 1042 (citing *Swain*, 430 U.S. at 381–82).

Perez and his amici suggest that the Suspension Clause requires more in his case: the appointment of government-compensated counsel. First, they argue that because petitions for review are substitutes for habeas proceedings, they must also provide the same procedural protections available in traditional habeas actions, including the appointment of government-compensated counsel for petitioners in appropriate cases. Second, they contend that because the Suspension Clause requires a "meaningful opportunity" to challenge detention orders, this court must have the authority to appoint compensated counsel to ensure Perez receives that opportunity.

We agree that a petition for review, in order to serve as an acceptable habeas substitute, must provide the petitioner "a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene*, 553 U.S. at 779 (quoting *St. Cyr*, 533 U.S. at 302). We assume that there may be cases in which a mentally incompetent petitioner requires the

assistance of counsel to seek meaningful review of a removal order and that appointment of counsel may be necessary in such cases. But, we part company with Perez and his amici on whether we must order the government to compensate court-appointed counsel in this petition for review.

We start from the premise that we plainly had the ability to appoint pro bono counsel to represent Perez in his petition for review. *See, e.g.*, 28 U.S.C. § 1915(e)(1); *United States v. 30.64 Acres of Land*, 795 F.2d 796, 800 (9th Cir. 1986). However, our authority to do so in this case stems from our inherent judicial power, rather than the Suspension Clause. The question before us is thus more limited: whether the Suspension Clause requires the government compensation of court-appointed counsel. We hold that it does not, at least as long as we can obtain the assistance of competent pro bono counsel. The unavailability of compensation for counsel does not reduce the scope of the "review" or "relief" available to REAL ID Act petitioners who obtain competent pro bono representation. *See Puri*, 464 F.3d at 1042.

Nor was the right to a compensated appointed attorney a part of "the writ as it existed in 1789." *St. Cyr*, 533 U.S. at 304. While Perez and his amici proffer some historical evidence that English courts possessed the authority to appoint counsel for habeas petitioners, these sources do not shed any light as to the requirement or means for court-ordered compensation of such counsel. In fact, we have previously held that an attorney directed to represent a traditional criminal habeas petitioner seeking the writ under 28 U.S.C. § 2255 is not entitled to compensation under the Fifth Amendment. *See United States v. Dillon*, 346 F.2d 633, 636 (9th Cir. 1965). We recognized that although "the obligation of the legal profession to serve indigents on court order is an ancient and established tradition," "the obligation

. . . to serve without compensation has been modified only by statute." *Id.* If appointed lawyers in core habeas proceedings are not constitutionally entitled to compensation, then it follows that compensation for appointed counsel is not essential in habeas substitutes under the Suspension Clause.[3]

## B.

It has long been recognized that courts have the inherent authority to appoint counsel when necessary to the exercise of their judicial function, even absent express statutory authorization. As the Supreme Court has stated:

> Courts have (at least in the absence of legislation to the contrary) inherent power to provide themselves with appropriate instruments required for the performance of their duties. This power includes authority to appoint persons unconnected with the court to aid judges in the performance of specific judicial duties, as they may arise in the progress of a cause.

*Ex Parte Peterson*, 253 U.S. 300, 312 (1920) (citation omitted); *see also Young v. U.S. ex rel. Vuitton et Fils S.A.*,

---

[3] In so holding, we do not address whether due process may require the appointment of government-compensated counsel for mentally incompetent aliens in petitions for review. *See Thuraissigiam v. U.S. Dep't of Homeland Security*, 917 F.3d 1097, 1111 (9th Cir. 2019) ("Although often conflated, the rights protected by the Suspension Clause are not identical to those under the Fifth Amendment's guarantee of due process."). Neither Perez nor his amici argue that he is entitled to compensated counsel as a matter of due process, presumably because Perez has received the full benefit of able pro bono representation.

481 U.S. 787, 793, 801 (1987) (recognizing a court's "inherent power" to appoint a private attorney to prosecute contempt proceedings).

This inherent judicial authority has been codified in the All Writs Act, which provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The "purpose and function" of the All Writs Act is "to supply the courts with the instruments needed to perform their duty, as prescribed by the Congress and the Constitution." *Harris v. Nelson*, 394 U.S. 286, 300 (1969). The Act formally recognizes an Article III court's inherent authority to "fashion appropriate modes of procedure" necessary to the exercise of its judicial function. *Id.* at 299. Under this authority, there is no question that we may appoint counsel when we deem it necessary to assist in our meaningful review of a removal order. In fact, we exercised that very authority here.

However, our appointment of counsel for Perez pursuant to our inherent court powers does not necessarily entail the compensation that Perez and amici seek. Our authority to appoint[4] counsel is not coextensive with our authority to order compensation of such counsel. The former derives

---

[4] We have recognized that "courts use the word 'appoint' in two different senses": (1) "to order an attorney to represent an indigent client, whether with or without compensation," or (2) "to designate a *pro bono* volunteer attorney as counsel of record for an indigent client." *30.64 Acres*, 795 F.2d at 800. In this opinion, we use the word "appoint" broadly to refer to both these purposes, without abrogating the distinction recognized in *30.64 Acres* between the "request" of counsel under the federal in forma pauperis statute, 28 U.S.C. § 1915, and the "appointment" of counsel under other statutes or our inherent authority.

from the judiciary's inherent authority, while the latter is a specific imposition on the public fisc—something generally permissible only where the legislature has provided such authority.[5]

If compensation is not authorized by statute, we typically must rely on the longstanding tradition of pro bono representation in the legal profession. This is the teaching of *Dillon*, in which we held that an attorney appointed by the court to represent an indigent federal habeas petitioner was not entitled to be compensated for his services under the Just Compensation Clause of the Fifth Amendment. 346 F.2d at 636. After discussing the traditional "obligation on the part of the legal profession to represent indigents upon court order, without compensation," we noted that "appointed counsel have generally been compensated, if at all, only by *statutory* fees which would be inadequate under just compensation principles, and which are usually payable only in limited types of cases." *Id.* at 635 (emphasis added). We further explained that "[t]he problem of providing some system of compensation for appointed counsel, in light of the developing law of the right of indigents to counsel, is a matter for legislative and not judicial treatment." *Id*. at 636.

---

[5] Some expenditures associated with the appointment of counsel for the purpose of assisting the court's resolution of a case or performance of its judicial functions may be appropriately covered under the judiciary budget or taxed as costs under relevant court rules. *See, e.g.*, *Ex Parte Peterson*, 253 U.S. at 314–15 ("As Congress has made no provision for paying from public funds either the fees of auditors or the expense of the stenographer, the power to make the appointment without consent of the parties is practically dependent upon the power to tax the expense as costs." (footnote omitted)); Fed. R. App. P. 39. But Perez does not seek compensation out of this court's budget (nor does he identify a fund from which we can do so) or seek to tax costs.

The critical basis for the distinction between the court's authority to appoint counsel and its authority to require government compensation of counsel lies in the bedrock separation of powers principles central to our constitutional system of government, wherein Congress, and not the judiciary, holds the power of the purse.**[6]**   Under these principles, our authority to appoint Perez counsel at the public's expense generally must emerge from a statutory authority established for that purpose.**[7]**

## C.

We therefore turn to whether there is a statutory basis for the compensation of Perez's counsel.  Perez and amici argue that such authority is found in the All Writs Act, 28 U.S.C. § 1651; the habeas statutes, 28 U.S.C. § 2241 and § 2243; or the Criminal Justice Act, 18 U.S.C. § 3006A.  We conclude that none of these statutes authorizes us to order government compensation of Perez's counsel in his petition for review.

---

**[6]** *See* U.S. Const. art. I, § 9, cl. 7 (Appropriations Clause); U.S. Const. art. I, § 8, cl. 1 (Spending Clause); *see also* The Federalist No. 78, at 1 (Alexander Hamilton) ("The legislature not only commands the purse, but prescribes the rules by which the duties and rights of every citizen are to be regulated. The judiciary, on the contrary, has no influence over either the sword or the purse; no direction either of the strength or of the wealth of the society; and can take no active resolution whatever."); The Federalist No. 58, at 2 (James Madison) ("This power over the purse may . . . be regarded as the most complete and effectual weapon with which any constitution can arm the immediate representatives of the people . . . .").

**[7]** We need not confront what remedies would be appropriate if we were unable to obtain competent uncompensated counsel in a case requiring such an appointment.  There is no contest that Perez was provided such counsel here.

### 1    *The All Writs Act*

The All Writs Act, 28 U.S.C. § 1651(a), codifies the courts' inherent authority to "fashion appropriate modes of procedure" necessary to the exercise of the judicial function, *Harris*, 394 U.S. at 299, which may include the appointment of counsel.  However, the Act requires that those "modes of procedure" be "agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).  Moreover, the Act "cannot enlarge a court's jurisdiction."  *Clinton v. Goldsmith*, 526 U.S. 529, 535 (1999) (quoting 19 J. Moore & G. Pratt, Moore's Federal Practice § 204.02[4] (3d ed. 1998)).  Rather, the All Writs Act "is a residual source of authority to issue writs that are not otherwise covered by statute.  When a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling."  *Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985).  Thus, although the All Writs Act "empowers federal courts to fashion extraordinary remedies when the need arises, it does not authorize them to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate."[8]  *Id*.

---

[8] We have therefore cautioned against the "dangers of unprincipled use" of its power under the All Writs Act, for

> without articulable and practically applicable guidelines to govern the issuance of extra-ordinary writs, appellate judges would continually be subject to the temptation to grant such relief merely because they are sympathetic with the purposes of the petitioners' underlying actions, or because they question the trial court's ability to direct the litigation efficiently or impartially.  As with many other facets of judicial power, the continuing effectiveness of an appellate

Although we have authority under the All Writs Act to order the appointment of counsel, our respect for the Constitution's separation-of-powers scheme eschews us from directing the expenditure of the public fisc when Congress has not authorized such use. Here, ordering the government to compensate counsel is not necessary for the exercise of our jurisdiction over Perez's petition for review. Whether such an order might be required under different circumstances—such as for example, when no competent pro bono counsel could be appointed—is not before us.

2. *The Federal Habeas Statutes, 28 U.S.C. §§ 2241 and 2243*

Amici argue that 28 U.S.C. § 2243, which authorizes the courts to adjudicate federal habeas petitions "as law and justice require," allows the appointment of government-funded counsel. Under the REAL ID Act, however, petitions for review of final orders of removal are no longer governed by the federal habeas corpus statutes. *See Mamigonian v. Biggs*, 710 F.3d 936, 941 (9th Cir. 2013) ("[T]he REAL ID Act precludes aliens . . . from seeking habeas relief over final orders of removal in district courts."); *Alvarez-Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) ("[T]he Act eliminated habeas jurisdiction, including jurisdiction under 28 U.S.C. § 2241, over final orders of deportation, exclusion, or removal."). Under the REAL ID Act, provisions pertaining to "habeas corpus review pursuant to" 28 U.S.C. § 2241 and "any other habeas corpus provision" no longer apply to review of final removal orders. 8 U.S.C.

---

court's section 1651 power depends on its reasoned and principled exercise.

*Bauman v. U.S. Dist. Court*, 557 F.2d 650, 653–54 (9th Cir. 1977).

§ 1252(a)(5). Sections 2241 and 2243 therefore do not provide authority for this court to compensate appointed counsel. In the face of these authorities and Congress' express intent with the REAL ID Act, we cannot extend the federal habeas statutes to require government compensation of appointed counsel in petitions for review under 8 U.S.C. § 1252.

### 3. *The Criminal Justice Act*

Finally, Perez relies on the Criminal Justice Act, citing 18 U.S.C. § 3006A(a)(2)(B), which provides that when "the interests of justice so require, representation may be provided for any financially eligible person who . . . is seeking relief under section 2241, 2254, or 2255 of title 28."[9] But, as noted above, petitions for review no longer qualify under the REAL ID Act as statutory habeas actions. Moreover, the CJA was enacted "to promote the cause of criminal justice by providing for the representation of defendants . . . in criminal cases in the courts of the United States." Pub. L. No. 88-455, 78 Stat. 552 (1964). When read in conjunction with the REAL ID Act, we conclude that the

---

[9] Amici's argument is slightly different. Invoking our authority to "fashion appropriate modes of procedure" and ensure that the petitioner can meaningfully challenge his removal order, they assert that we may "look to the CJA in shaping appropriate procedures for appointing counsel." But amici do not argue, nor could they, that our inability to compensate counsel affected Perez's ability to meaningfully challenge his removal.

purpose and text of the CJA preclude its application to petitions for review.[10]

We recognize that, prior to the REAL ID Act, some federal courts invoked the CJA as authority for appointing compensated counsel for aliens challenging their deportation, while others declined to do so. *Compare Duran v. Reno*, 193 F.3d 82, 85 (2d. Cir. 1999) (allowing that "CJA funds may be used to provide counsel for appellant" challenging deportation order under § 2241), *vacated as moot*, 197 F.3d 63 (2d Cir. 1999), *with Perez-Perez v. Hanberry*, 781 F.2d 1477, 1479–80 (11th Cir. 1986) (holding that the CJA "does not authorize appointment of counsel at government expense for excludable aliens seeking parole"). However, the REAL ID Act eliminated any basis

---

[10] Our perspective is also reflected in the Administrative Office of the United States Courts' implementing policy and guidelines for CJA appointments, which provide:

> Cases or proceedings which are not covered by or compensable under the CJA include the following:
>
> …
>
> (d) Administrative proceedings before the U.S. Citizenship and Immigration Services (USCIS), removal or deportation proceedings before the Immigration Court, review of the Immigration Court's decision by the Board of Immigration Appeals, *and judicial review by the federal courts of appeals of petitions for review from these administrative decisions.*

"Guidelines for Administering the CJA and Related Statutes," Vol. 7: Defender Services, Part A of the Administrative Office of the United States Courts' Guide to Judiciary Policy, § 210.20.50(d) (emphasis added).

for concluding that the CJA's provision of counsel for indigent petitioners "seeking relief under section 2241, 2254, or 2255 of title 28" extends to petitions for review under 8 U.S.C. § 1252(a).  Because Perez's petition for review is governed by the REAL ID Act, the compensatory provisions of the CJA do not extend to his counsel's services before this court.

### III.

Although we have the inherent authority to appoint pro bono counsel for Perez, and did so in his petition for review, we lack the requisite statutory authority to order government compensation for his appointed counsel.  We therefore **DENY** Perez's request for appointment of counsel compensated at government expense.[11]

---

[11] We address the remaining issues in Perez's petition for review in a separate and concurrently filed memorandum disposition, *Perez v. Barr*, __ F. App'x __ (9th Cir. 2020).